OPINION OF THE COURT
 

 Smith, J.
 

 The primary issue on this appeal is whether the siting of a cellular telephone facility qualifies as a "public utility” use variance exception under
 
 Matter of Consolidated Edison Co. v Hoffman
 
 (43 NY2d 598).
 

 Respondent Cellular Telephone Company (Cellular One), formerly known as Metro One, is a telephone corporation (Public Service Law § 2 [17]; Transportation Corporations Law § 25) and a public utility company (Public Service Law § 2
 
 *368
 
 [23];
 
 [1]
 

 see also,
 
 Village Law § 5-524 [6] [defining public utility services to include telephone services]). Cellular One is licensed by the Federal Communications Commission (FCC) and the New York Public Service Commission (PSC) to provide cellular telephone service to subscribers throughout the New York-New Jersey metropolitan area. The FCC has authorized respondent "to establish a new cellular system operating on frequency Block A in the Domestic Public Cellular Radio Telecommunications Service” to serve the New York metropolitan area. The PSC has issued respondent a certificate of public convenience and necessity, as is required for every telephone corporation (Public Service Law § 99). In addition, the PSC is authorized to prescribe respondent’s service and rate standards
 
 (see,
 
 Public Service Law § 91). Cellular One operates more than 100 cell sites with over 3,500 transmitters in the New York-New Jersey area.
 

 On July 20, 1990, Cellular One informed the Dobbs Ferry Planning Board of its proposal to establish a cellular telephone cell site on the 209-acre grounds of Children’s Village, a not-for-profit corporation licensed to provide treatment and a home for neglected children. Erection of the cell site would enable respondent to expand and fill gaps in its service area. Presently, due to the large intervals between its existing antennas, respondent cannot adequately transmit or receive calls in the area of the proposed site. Calls of respondent’s customers in that area are often interrupted or disconnected due to the scarcity of antennas, and interference from static. In addition, cross talk and intermodulation render inaudible calls that are connected. On September 26, 1990, pursuant to a lease agreement, Cellular One leased approximately 800 square feet of land from Children’s Village. The lease agreement allowed respondent to establish and operate the cell site on the grounds.
 

 The proposed cell site involves the installation of nine cellular antennas, measuring 4 feet 1 inch by approximately 10 inches, which would be attached to an existing 70-foot water tower. The antennas would not increase the height of the water tower. A one-story 14-feet by 28-feet modular building would house computer equipment adjacent to the water
 
 *369
 
 tower. Located at approximately 400 to 500 feet from the nearest private residential dwelling, the water tower would also be at a higher elevation than residential dwellings in the area. In addition, the proposed site requires the enhancement of an existing dirt road to facilitate access to the site, and the installation of fencing.
 

 The Children’s Village site is located in the E (Educational District) Zone under the Dobbs Ferry Zoning Code. The proposed cell site is not a permitted use in this zone. Thus, in October 1990, Cellular One applied for a permit to begin the installation. By letter dated October 9, 1990, the Dobbs Ferry Building Inspector informed respondent that its cell site proposal had to be denied because such business was nót a permitted use in the zone.
 

 On October 18, 1990, Cellular One applied for a use variance to construct the cell site on the Children’s Village property. A series of public hearings regarding respondent’s application commenced on November 14, 1990 and continued on January 9, 1991 and February 13, 1991. During the hearings, the Chairman of the Zoning Board questioned the authority of the Board to grant the variance, in light of this Court’s holding in
 
 Matter of Otto v Steinhilber
 
 (282 NY 71). He also inquired about alternate sites and required the submission of the lease between Children’s Village and Cellular One. Several people who owned homes near the Children’s Village site raised concerns about noise, reception interference and health risks. Cellular One objected to the submission of the lease and its viewing by the public, but subsequently surrendered it to the chairman. In addition, respondent argued that other alternative sites were not suitable, and that the holding in
 
 Matter of Otto
 
 did not apply to its variance request since it is a "public utility.” Cellular One also offered expert testimony to show that the granting of the application will have no negative impact on the neighborhood and that any concerns in that respect were unwarranted. The experts stated that the proposed cell site would have no effect on washing machines, telephones, radios or televisions, that there would be no disruption of any other frequencies, and that there would be no effect of any of the transmissions on humans or animals or any other organisms. In addition, the experts explained that the additional traffic flowing from the installation of the cell site would be limited to one vehicle accessing the site once or twice a month for routine maintenance. Respondent asserted that it selected the Children’s
 
 *370
 
 Village site because of its natural elevation, its location in a heavily wooded area and proximity to highways, and the existing water structure, which would mean that Cellular One would not have to create a tower elsewhere.
 

 Appellant Zoning Board denied the use variance, finding that Cellular One offered insufficient evidence to establish (1) "that the land at issue cannot yield a reasonable return if used only for the purpose allowed by the applicable zoning statute,” (2) "that its circumstance (or that of the Children’s Village) is due to a unique situation and not to the general condition of the neighborhood,” (3) "that there exists a public necessity for its service, or what the need of the broader public is relating to such service, or that it is a public utility relating to the zoning ordinance,” (4) "the absence of possible future hazards to the health and welfare of the community,” and (5) "the lack of alternate sites (i.e. on other than Children’s Village land) which would accommodate [Cellular One’s] needs for its business.”
 

 This CPLR article 78 proceeding challenging the Board’s determination followed. Cellular One alleged that the Board’s actions in denying the use variance were arbitrary and capricious, unsupported by the record, not supported by substantial evidence, and contrary to law. Cellular One asserted that the Board failed to apply the appropriate standard of public necessity set forth in
 
 Matter of Consolidated Edison Co. v Hoffman (supra),
 
 and, instead, erroneously applied the test of unnecessary hardship applicable to nonutility applications for use variances. Supreme Court granted the petition and directed appellants to issue the use variance, finding, as a matter of law, that Cellular One is a public utility and that the Board’s finding and conclusions to the contrary were incorrect, and that the Board’s decision was "significantly flawed in its analysis and conclusions” and "arbitrary and capricious.” (153 Mise 2d 302, 309.) The Appellate Division affirmed, stating that Supreme Court properly determined that Cellular One is a public utility, that the test for a use variance set forth in
 
 Matter of Consolidated Edison Co. v Hoffman
 
 is applicable, that Cellular One made a sufficient showing to warrant the issuance of the use variance, and that the Board’s determination to the contrary was arbitrary and capricious (188 AD2d 648). This Court granted leave to appeal.
 

 On this appeal, appellants contend that the determinations
 
 *371
 
 of Supreme Court and the Appellate Division unnecessarily expand the test for entitlement to a use variance in
 
 Matter of Consolidated Edison (supra)
 
 to include the facilities of all public utilities, regardless of whether they provide essential services to the community. Appellants urge that the exception should be used to protect only public utilities, such as electric, gas, steam and water corporations, that supply essential services which are commonly recognized by the grant of "governmental type” powers, including the power of eminent domain, monopoly status, and partial zoning exemption for their major facilities. Respondent argues that the test in
 
 Matter of Consolidated Edison (supra)
 
 applies to all public utilities, and that it is a public utility within the meaning of the Court’s decision in that case, and, thus, it is entitled to the application of the "public necessity” use variance test.
 

 A "public utility” has been defined to mean " 'a private business, often a monopoly, which provides services so essential to the public interest as to enjoy certain privileges such as eminent domain and be subject to such governmental regulation as fixing of rates, and standards of service’ ” (2 Anderson, American Law of Zoning § 12.32, at 568-569 [3d ed]). Characteristics of the public utility include (1) the essential nature of the services offered which must be taken into account when regulations seek to limit expansion of facilities which provide the services, (2) "operation] under a franchise, subject to some measure of public regulation,” and (3) logistic problems, such as the fact that "[t]he product of the utility must be piped, wired, or otherwise served to each user * * *[,] the supply must be maintained at a constant level to meet minute-by-minute need[, and] [t]he user has no alternative source [and] the supplier commonly has no alternative means of delivery”
 
 (id.,
 
 at 569).
 

 We conclude that a cellular telephone company is a "public utility” as defined here and sufficiently possesses the characteristics outlined above. In addition, the construction of an antenna tower in a residential district to facilitate the supply of cellular telephone service is a "public utility building” within the meaning of a zoning ordinance
 
 (see, Matter of Payne v Taylor,
 
 178 AD2d 979).
 

 In
 
 Matter of Consolidated Edison (supra),
 
 this Court created a "public utility” exception to the test for unnecessary hardship, warranting the grant of a use variance, outlined in
 
 *372
 

 Matter of Otto v Steinhilber (supra).
 

 [2]
 

 In
 
 Matter of Consolidated Edison,
 
 the Zoning Board of Appeals of the Village of Buchanan denied an application by Consolidated Edison Company for a variance for the construction of a wet cooling tower for its nuclear generating plant. The Board determined that no practical difficulties requiring a variance had been shown. Consolidated Edison Company commenced an article 78 proceeding, seeking to annul the Board’s determination. The Court held the factors outlined in
 
 Matter of Otto v Steinhilber (supra)
 
 are not appropriate where the entity requesting the variance is a public utility. Thus, the Court stated:
 

 "Instead, the utility must show that modification is a public necessity in that it is required to render safe and adequate service, and that there are compelling reasons, economic or otherwise, which make it more feasible to modify the plant than to use alternative sources of power such as may be provided by other facilities”
 
 (Matter of Consolidated Edison,
 
 43 NY2d 598, 611,
 
 supra).
 

 The Court stated further that "where the intrusion or burden on the community is minimal, the showing required by the utility should be correspondingly reduced”
 
 (id.,
 
 at 611).
 

 Matter of Consolidated Edison (supra),
 
 applies to all public utilities. It also applies to entirely new sitings of facilities, as well as the modification of existing facilities. As we stated in that case, "[I]t has long been held that a zoning board may not exclude a utility from a community where the utility has shown a need for its facilities”
 
 (id.,
 
 at 610). There can be no question of Cellular One’s need to erect the cell site to eliminate service gaps in its cellular telephone service area. The proposed cell site will also improve the transmission and reception of existing service. Application of our holding in
 
 Matter of Consolidated Edison (supra)
 
 to sitings of cellular telephone companies, such as Cellular One, permits those companies to construct structures necessary for their opera
 
 *373
 
 tian which are prohibited because of existing zoning laws and to provide the desired services to the surrounding community. Furthermore, the test we announced in that case, as well as the regulations of the FCC and the PSC, serve to guard against appellants’ concerns about the potential proliferation of similar applications and the inability of local land use officials to exercise control to protect their communities.
 

 Nothing in the plain language of the amendment to section 7-712-b (2)
 
 [3]
 
 of the Village Law supports the conclusion that the Legislature intended to overrule
 
 Matter of Consolidated Edison.
 
 Section 7-712-b (2) makes no reference to a "public utility,” and, in essence, codifies the requirements for demonstrating unnecessary hardship established in
 
 Matter of Otto (supra).
 
 Furthermore, the effective date of the amendment to section 7-712-b was July 1, 1992, long after the Zoning Board denied petitioner’s variance application and after petitioner commenced this article 78 proceeding.
 

 We are not persuaded by appellants’ argument that the record supports their conclusion that Cellular One did not establish its entitlement to a use variance. A board’s determination denying a variance will be sustained only if it has a rational basis and is supported by the record
 
 (Matter of Consolidated Edison,
 
 43 NY2d, at 608,
 
 supra).
 
 The record supports the conclusion that the proposed installation would have a negligible impact on the surrounding neighborhood. It would not affect washing machines, telephones, radios or televisions, and there would be no disruption of any other frequencies. Furthermore, the transmissions from the cell site would not affect humans, animals or any other organisms. Moreover, the record supports the conclusion that Cellular One sustained its burden of proving the requisite public necessity. Cellular One established that the erection of the cell site would enable it to remedy gaps in its service area that
 
 *374
 
 currently prevent it from providing adequate service to its customers in the Dobbs Ferry area. No rational basis exists for the Board’s determination, and the Board abused its discretion, as a matter of law, in denying petitioner’s application for a use variance.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., Bellacosa and Levine concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Public Service Law § 2 (23) states that the term "public utility company” applies to "one or more persons or corporations operating an agency or agencies for public service, and who or which is or are subject to the jurisdiction, supervision and regulations prescribed by or pursuant to this chapter.”
 

 [2]
 

 . In
 
 Matter of Otto v Steinhilber,
 
 the Court articulated the factors that a zoning board must consider before finding unnecessary hardship warranting the grant of a use variance. The Court stated that "the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality”
 
 (id,.,
 
 at 76).
 

 [3]
 

 . Section 7-712-b (2) (b) provides: "No such use variance shall be granted by a board of appeals without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship. In order to prove such unnecessary hardship the applicant shall demonstrate to the board of appeals that (1) under applicable zoning regulations the applicant is deprived of all economic use or benefit from the property in question, which deprivation must be established by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) that the alleged hardship has not been self-created.”