OPINION OF THE COURT
Edmund A. Calvaruso, J.
Recent Federal legislation has fueled a surge of applications at the local level for cellular communications towers. The towers, often ranging from 100 feet to 250 feet or higher, may not be prohibited by the local municipality.[1] Rather, the Telecommunications Act of 1996 preserves local control over placement, construction and modification of new tower applications.
*569 Petitioner Cellular One asked the Town of Irondequoit for permission to construct a new cellular communications tower. After review of the application and hearing, the Board denied both the use and area variances. Petitioner files a CPLR article 78 challenge, and now asks this court to evaluate the denial.
The facts are as follows. On May 6, 1996 the Board heard testimony from Keif Coppins. Mr. Coppins explained the proposed tower would eliminate some problem areas. Specifically, he expected to improve communications in two areas. First was the southern Irondequoit Bay zone. Second, Cellular One wished to improve communications on route 104 near Oakwood Drive and Eastman Kodak. Petitioner suggested significant dropped rates from 7:00 a.m. to 9:00 a.m. and again in the afternoons.
The hearing testimony also accounts that petitioner’s attorney described capacity and coverage weaknesses. He explained that their engineers then analyzed those weaknesses, and provided a target area for the new towers. Petitioners then "bull’s-eyed” a cell site within the target area.
New York law requires the applicant to comply with the standards set forth in Matter of Consolidated Edison Co. v Hoffman (43 NY2d 598 [1978]) and Matter of Cellular Tel. Co. v Rosenberg (82 NY2d 364 [1993]). In Consolidated Edison (supra, at 611), the Court held public utilities, such as the plaintiff, must show "modification is a public necessity * * * required to render safe and adequate service”. An applicant must prove "compelling reasons, economic or otherwise” (at 611), explaining why the proposed request is more feasible than alternative options. Notwithstanding, where the intrusion or burden on the community is minimal, the showing required by the utility should be correspondingly reduced.[2]
In Rosenberg (supra, at 372-373), another public utilities case, the Court held: "Matter of Consolidated Edison (supra), applies to all public utilities. It also applies to entirely new sitings of facilities, as well as the modification of existing facilities * * * the test we announced in that case, as well as the regulations of the FCC and the PSC, serve to guard against appellants’ concerns about the potential proliferation of similar applications and the inability of local land use officials to exercise control to protect their communities.”
*570 The size of the tower and the impact on local residences place this matter beyond a minimal intrusion or burden. That being the case, it is incumbent upon Cellular One to show compelling reasons why the proposed request is more feasible than other options. The record would indicate Cellular One has failed to do so.
For example, attorney Oliverio described capacity and coverage weaknesses without providing particulars. While the target site within the cell is selected by the engineers, he supplies no quantitative specifics which would allow the Board members to investigate these conclusions. Nor does Mr. Coppins provide the details substantiating the need for another tower.
Moreover, the transcript of the hearing is brimming with Board members asking for alternate site information for the tower. Mr. Coppins told the Board the single location requested was their alternate site. Another request for data on alternate sites was met with this response: 'T don’t know the answer. With the engineering that was done, I am sure that they did it. We got the site after it came through.”
In short, the applicant either refused or was unable to provide any helpful information about other sites for the tower. They could not, or would not, give necessary information to allow the Board to conclude there was a compelling reason to approve this location over other possibilities. Without such information, the Board was left with an inability to exercise control to protect its communities. (Matter of Cellular Tel. Co. v Rosenberg, 82 NY2d 364 [1993], supra; Town Law § 276-b [2], [3].)[3]
Accordingly, the petitioner’s application shall be denied. While the Telecommunications Act of 1996 bars a blanket prohibition on communications towers, local land use officials still may exercise control to protect their communities by limiting such towers to specific zoning districts, selecting the best possible location after considering the zoning districts within the town, taking precautions to mitigate the visual impacts, and requiring that towers are used by more than one user whenever possible. The Board acted within its providence in denying the application.

. 47 USC § 332 (c) (7) (B) (Telecommunications Act of 1996, added by Pub L 104-104, 110 US Stat 56, 151) preserves the local zoning authority of the municipality with the following Federal preemptions:
"(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—
"(I) shall not unreasonably discriminate among providers of functionally equivalent services; and
"(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
"(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
"(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
"(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission’s regulations concerning such emissions.
“(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.”

. Matter of Consolidated Edison v Hoffman, supra; see also, Knauff and Moses, Changing the Landscape: Cellular Communication Towers, Monroe County B Assn’s Views, at 6, 7, 20 (Sept./Oct. 1996).

. Note that to the extent the area variance calls for the Board to use the weighing analysis of the health, safety and welfare of the neighborhood or community against the benefit to the applicant (Matter of Sasso v Osgood, 86 NY2d 374 [1995]), Federal law preempts consideration of radio frequency emissions and any effects thereof so long as the facility complies with the Federal Communications Commission’s standards. (47 USC § 332.)