**SPRINT SPECTRUM L.P. d/b/a Sprint PCS, Plaintiff,**

v.

Craig **WILLOTH,** Chairman, Thomas McCune, Craig Litt, William Quinn and Eduard Kerkhoven, Members, constituting the Town of Ontario Planning Board, and Edward Collins, Code Enforcement Officer for the Town of Ontario, Defendants.

No. 97–CV–6473T.

United States District Court, W.D. New York.

Feb. 19, 1998.

254

Robert E. Hornik, Syracuse, NY, for Plaintiff.

John M. Wilson, II, Boylan, Brown, Code, Fowler, Vigdor & Wilson, LLP, Rochester, NY, for Defendants.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

Plaintiff, Sprint Spectrum, L.P. d/b/a Sprint PCS ("Sprint"), brings this action under the Federal Telecommunications Act of 1996 ("the Act") and Article 78 of the New York Civil Practice Laws and Rules, seeking to annul a decision of the Town of Ontario ("the Town") Planning Board which denied Sprint's applications for site plan approval of three cellular towers in the Town. Sprint asks this Court to grant its applications and direct the Town's Code Enforcement Officer to issue a permit for each site. Currently pending are the parties' motions for summary judgment. For the reasons discussed below, plaintiff's motion is denied and defendants' cross-motion for summary judgment is granted.

### BACKGROUND

Sprint has obtained an exclusive license from the Federal Communications Commission ("FCC") to provide digital personal communications services ("PCS") for the Buffalo Major Trading Area ("MTA"), which encompasses most of Western New York, including the Town of Ontario. Sprint paid $19,000,-000 for this ten-year FCC license, which requires it to provide PCS service to at least one-third of the population in the Buffalo MTA within five years of the issuance of its license. Sprint maintains that, in order to provide continuous uninterrupted service, it must develop an interconnected network of "cell sites" (i.e. antennae mounted on a pole or other structure) to provide overlapping

coverage in a grid pattern. The coverage area provided by each antenna depends on the height of the antenna, density of population, and local topography.

On May 21, 1996, Sprint filed with the Town of Ontario Planning Board three separate applications for site plan approval to construct cell sites at 426 Ridge Road, 6954 Slocum Road, and 193 County Line Road. Although Sprint's applications sought individual permits to erect a 150–foot tall steel-gray "monopole" cell tower on each site, Sprint's counsel conceded at oral argument that it was submitted on an all or nothing basis. The Town Planning Board discussed the applications at meetings and/or public hearings on June 11, 1996; July 9, 1996; August 13, 1996; September 4, 1996; September 17, 1996; May 20, 1997; July 8, 1997; August 26, 1997; and September 25, 1997.

After each meeting, Sprint submitted additional information or responses to public comments as requested by the Town. Sprint provided, among other things, simulated photos showing the proposed towers both with foliage on the surrounding trees and without foliage, as requested by the Town. Sprint also completed detailed Draft and Final Environmental Impact Statements which included computer-generated maps showing the proposed service areas at the Town's request, as provided by the New York State Environmental Quality Review Act ("SEQRA"), Article 8, New York Environmental Conservation Law.

On September 25, 1997, the Town made its final findings which were transcribed and filed with the Ontario County Clerk on October 1, 1997. The Town Planning Board denied all three of Sprint's applications for site plan approvals based on its findings that (1) the Sprint project would have "a measurable and significant impact on property values"; (2) the "cumulative impact of multiple towers would have a significant environmental impact on the Town of Ontario"; and (3) there would be "visual impact from any tower that is visible over a wide area".

The Board's main concern was apparently Sprint's unwillingness to consider alternatives (or, indeed, to even provide the Town with information about alternatives) with re-

spect to the number, height, and placement of cell towers. Sprint made a business decision that the Town of Ontario should be classified as "suburban" and, thus, that a signal strong enough for "in-building" coverage ($-99$ dBm) was required. Accordingly, Sprint insisted upon the approval of all three towers as being necessary to provide adequate (i.e. "in-building") coverage to the area it sought to service.

Sprint had classified the neighboring towns of Walworth and Macedon as "rural" and, thus, erected only one tower in each of those towns, which was sufficient to provide "in-vehicle" coverage ($-103$ dBm). The Town of Ontario Planning Board found that the population, topography, and other characteristics of Ontario were sufficiently similar to Walworth and Macedon that it should have also been classified as "rural" by Sprint, and that one tower would be sufficient. Sprint disputes the Town's authority to challenge its business decision regarding the level of coverage it decided to provide. Sprint insists that this Court's inquiry is limited to whether the Town's action in denying all three site plans was "supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

## *DISCUSSION*

The central issue is whether the Town of Ontario exceeded its authority in denying Sprint's application for three cell towers on the basis that Sprint's evidence demonstrated that a single tower could adequately perform the function necessary to provide the desired level of service to its cellular customers. Sprint insists that the question of adequacy of service in determining the number of towers necessary is not a permissible area of inquiry by the Town. The issue exemplifies the tension between the competing interests of local home rule and the implementation of the Federal Telecommunications Act of 1996. "The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981).

■ However, a local government's power to regulate land use is not unlimited, especially with respect to "personal wireless services facilities" (i.e. cell towers). Cellular service facilities are entitled to special zoning consideration both under the Federal Telecommunications Act of 1996, 47 U.S.C. § 332, and New York law, which has classified cellular providers as "public utilities." *Cellular Telephone Co. v. Rosenberg*, 82 N.Y.2d 364, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993).

*The Telecommunications Act of 1996, 47 U.S.C. § 332*

On February 8, 1996, President Clinton signed into law the Federal Telecommunications Act of 1996 ("the Act"), which has been characterized as "an unusually important legislative enactment" establishing national public policy in favor of reducing regulation and encouraging "the rapid deployment of new telecommunications technologies." *See Reno v. American Civil Liberties Union,* —— U.S. ——, 117 S.Ct. 2329, 2337–38, 138 L.Ed.2d 874 (1997).

■ The Act was not intended to preempt the authority of state and local governments to make decisions regarding the placement of wireless communications facilities within their borders. *BellSouth Mobility, Inc. v. Gwinnett County, Georgia,* 944 F.Supp. 923, 927 (N.D.Ga.1996); *Sprint Spectrum, L.P. v. Town of Farmington,* 1997 WL 631104 (D.Conn.1997). Rather, the Act reserves zoning authority to local governments while placing certain limitations on the exercise of that authority with respect to the regulation of "personal wireless services."

The Act provides, *inter alia,*

(c)(7) **Preservation of Local Zoning Authority.**

(A) **General Authority.** Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government ... over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) **Limitations.**

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services....

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence in a written record....

47 U.S.C. § 332(c)(7).

Sprint argues that the Town has violated the Act by (1) failing to support its decision by substantial evidence in a written record; (2) unreasonably discriminating among providers of wireless services; and (3) effectively prohibiting the provision of personal wireless services.

*Decision Supported By Substantial Evidence in a Written Record: 47 U.S.C. § 332(c)(7)(B)(iii).*

The Town's decision denying Sprint's applications for three site plan approvals is supported by "substantial evidence in a written record," as required by 47 U.S.C. § 332(c)(7)(B)(iii).

Sprint contends that the Town Planning Board acted beyond its authority because it based its decision on considerations not permitted by N.Y. Town Law § 274–a and the Town of Ontario Zoning Ordinance. Sprint insists that the Town's decision was based on the impermissible considerations of network design issues (i.e. Sprint's decision to provide "in-building" coverage) which were beyond the scope of the Town's statutory authority for consideration.

Sprint notes that it is a "public utility" and the applications at issue were "permitted land uses" for the parcels selected. Thus, Sprint argues that the Town abused its limited site plan approval power when it denied its application to erect three cell towers.

The Town claims that it complied with the Telecommunications Act, the New York

Town Law, the Town of Ontario Zoning Ordinance, and SEQRA in making its detailed findings regarding the economic, environmental and aesthetic impact of Sprint's proposed tower locations. Furthermore, the Town makes a compelling argument that Sprint has overplayed its rights as a "public utility" by insisting that the Town was not allowed to even consider whether one tower could provide the level of service necessary as opposed to three towers.

■ I find that the Town acted within its authority in considering alternatives to Sprint's proposed placement of three towers. Under New York law, cellular providers are considered "public utilities," and are entitled to wider zoning latitude in order to provide the service for which they are mandated. *Cellular Telephone Co. v. Rosenberg,* 82 N.Y.2d 364, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993). But Sprint's status as a utility does not grant it carte blanche authority to dictate the number and location of cell towers in any locality. While "it has long been held that a zoning board may not exclude a utility from a community where the utility has shown a need for its facilities ... this has never meant that a utility may place a facility *wherever it chooses within the community,*" *Matter of Consolidated Edison v. Hoffman,* 43 N.Y.2d 598, 610, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978). (Emphasis added.)

After considering Sprint's application, the Town concluded that one cell tower, strategically located, would effectively eliminate service gaps in that area and improve the transmission and reception of existing service.

■ Sprint's contention is that as a utility, it has the exclusive authority to determine the number of cell towers necessary to provide the desired level of service to the Town of Ontario and the surrounding communities. An important distinction between cellular providers and other "public utilities" is that the level of service provided by the more traditional public utilities, such as electric, gas and telephone, are heavily regulated by the Public Service Commission or the Federal Communications Commission. Generally, those utilities are regarded as monopolies subject to intensive administrative regula-

tion. However the Federal Communications Commission does not regulate cellular providers to the same extent. *See* 47 C.F.R. § 24.103(e) [Requiring only that PCS licensees provide "reliable service."] No administrative agency acts as a buffer between cellular companies' competitive need to provide the highest level of service possible and the communities' need to secure the comprehensive balanced use of property in their community. Thus, Sprint, like any cellular provider, is required under New York Law to provide "compelling reasons, economic or otherwise," justifying its request for three towers as more feasible than the alternative options offered by the Town of Ontario. Localities are still left to determine the location and number of towers needed to provide adequate service to their residents. *Consolidated Edison of New York v. Hoffman,* 43 N.Y.2d 598, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978). By enacting the Telecommunications Act, Congress did not intend to preempt the authority of state and local governments to regulate the location of cell towers within their communities.

The Town Planning Board did not exceed its authority in considering whether adequate service could be provided with fewer than three towers. Although considerations for the "level of service" as such is not a specific factor listed in N.Y. Town Law § 274-a or in the Ontario Zoning Ordinance, the Town was nonetheless authorized to consider whether alternative sites are available for a public utility's facility which could provide safe and adequate service. *Niagara Mohawk Power Corp. v. Fulton,* 8 A.D.2d 523, 188 N.Y.S.2d 717 (4th Dept.1959) ["In determining the reasonable necessity of a particular site, consideration must be given to the availability of other sites and to the degree of detriment that might be caused by the various sites ..."]; *Bell Atlantic NYNEX Mobile, Inc. v. Lonergan,* 172 Misc.2d 317, 659 N.Y.S.2d 402 (Sup.Ct. Westchester Cty.1997) ["Public necessity is shown when 'the proposed site is necessary to enable the company to render safe and adequate service and that no alternative sites are available which could be used with less disruption to the community's zoning plan,'" *citing* 1 Anderson, New York

Zoning Law and Practice § 11.24.]; *Genesee Telephone Co. v. Szmigel*, Slip Op. Index No. 6707/96, Sup.Ct., Monroe County, Feb. 6, 1997 (Calvaruso, J.) [Holding that "it is incumbent on Cellular One to show compelling reasons why the proposed [cell tower site] request is more feasible than other options."].

Sprint achieved "in-vehicle" coverage ($-103$ dBm) with one tower in the similarly-constituted neighboring towns of Walworth and Macedon. However, throughout this litigation, Sprint has consistently referred to the "in-building" level of coverage ($-99$ dBm) as Sprint's "goal" or "objective," for the Town of Ontario without providing any authority (FCC regulation, license condition, etc.) as to why that higher level of coverage is the *minimal* level which would be "adequate" for the Town of Ontario. Even so, the Town still had the authority to determine whether Sprint could provide that level of service with fewer than three towers.

Finally, the Town has shown by substantial evidence that Sprint can provide the "in-building" level of service to Ontario with sufficient overlap of coverage to neighboring towns by erecting only one centrally located tower.

Evidence in the record which supported the Town's decision includes computer-generated diagrams prepared and submitted by Sprint (Figures F-2 and F-5, attached as Exhibit L to the Hornick Affidavit), which show the comparative areas of "in-building" coverage achieved with Sprint's proposed three towers (Fig. F-2) as opposed to the Town's proposed single, centrally-located 250-foot tower in an industrial zone (Fig. F-5). A comparison of each alternative shows that the area of in-building coverage is substantially similar under both options. Particularly noteworthy is the fact that both options clearly provide the "in-building" level of service to the most heavily-populated (western) portion of the Town, which according to Sprint's own testimony before the Board, was its primary objective. [*See* Minutes of May 20, 1997 Board Metting, attached at Exhibit I to Hornick Affidavit, in which Sprint's attorney told the Board that "the PCS license requires Sprint to cover people

rather than a requirement to cover an area. The goal is to be where the people are."]

I find that the Town Planning Board's denial of site plan approval for Sprint's proposed three towers was supported by substantial evidence in a written record as required by § 332(c)(7)(B)(iii) of the Act. The Town made specific written findings after conducting no less than nine lengthy meetings or hearings on Sprint's applications. Those findings were based on the evidence submitted to the Planning Board by Sprint and by other interested parties which supported the conclusion that the proposed towers would have a cumulative economic, environmental and visual impact on the Town.

Guided by the traditional zoning factors set forth for site plan approval in N.Y. Town Law § 274-a and the 1996 Ontario Zoning Ordinance, the Town considered the cumulative impact of three towers and determined that the project as a whole was not entitled to site plan approval. The Town found that Sprint could provide the same or similar "adequate" service with substantially less economic, environmental, and aesthetic impact by erecting one 250-foot tall tower in the Town's industrially zoned district. The Town was left with no option but to deny Sprint's applications because Sprint insisted on an "all-or-nothing" approval of all three sites.

*Discrimination Among Providers: 47 U.S.C. 332(c)(7)(B)(i)(I)*

Sprint maintains that the Town's denial of its applications "unreasonably discriminate[s] among providers of functionally equivalent services" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I). Sprint argues that Frontier Cellular was granted a permit by the Town in 1993 to erect a 250-foot cellular tower without having to provide much of the information (including the detailed environmental data) which was required of Sprint. It complains that the Town's actions have the effect of denying Sprint the opportunity to compete for cellular customers in Ontario.

The record shows that Frontier erected a single tower within the Town's public utility corridor in an industrially zoned area—the exact proposal which Sprint has rejected in

this case. In support of its actions, the Town cites the Congressional Conference Committee Report explaining that it was Congress' intent that the phrase "unreasonably discriminate between providers" would

> provide localities with the flexibility to treat facilities that create different visual, aesthetic or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services. For example, the conferees do not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor's 50-foot tower in a residential district.

H.R. Rept. No. 458, 104th Cong., 2nd Sess. 208 (1996).

I find that the Town has not "unreasonably discriminated" among providers of personal communications services. Although the Town did not require Frontier to submit the lengthy Draft and Final Environmental Impact Statements and other supporting documentation which Sprint was required to provide, the circumstances of the Frontier application were significantly different than those of the Sprint applications. The Town Planning Board's status as the SEQRA "Lead Agency" required it to mitigate adverse environmental impacts to the maximum extent possible. The Board's determination that the Sprint applications for construction of three towers in residential zones required submission of the detailed Environmental Impact Statements did not constitute an "unreasonable discrimination" among providers. Likewise, the Town's approval of a singular tower in the public utility corridor of an industrial zone for Frontier and denial of Sprint's applications for three towers in residential zones is not an "unreasonable discrimination," even if it places Sprint at a competitive disadvantage.

*Prohibiting Wireless Services: 47 U.S.C. § 332(c)(7)(B)(i)(II)*

■ Sprint claims that the Town's decision also violates the Act by "prohibit[ing] or having the effect of prohibiting the provision of personal wireless services," as proscribed by 47 U.S.C. § 332(c)(7)(B)(i)(II). Sprint contends that in denying its applications, the Town has prohibited Sprint from providing digital PCS service which is an advance in cellular communications technology over the analog technology now being used by other cellular companies in the Town.

There is no question of Sprint's need to erect a cell site in the Town of Ontario to eliminate service gaps and to integrate its service with the neighboring townships. But, the Town was left with no choice but to reject Sprint's "all or nothing" applications for three towers. The record is clear that the Town would grant Sprint's application for one 250-foot tower in the Town's industrial zone but Sprint has refused to modify its request for anything less than three towers. I find that the Town has not violated the Act by "prohibiting the provision of personal wireless services."

### CONCLUSION

The Town has not violated any provision of the Federal Telecommunications Act, New York state law, nor the Town of Ontario Zoning Ordinance. The Town's denial of Sprint's applications was based on substantial evidence in the written record, did not unreasonably discriminate among cellular providers, and did not have the effect of prohibiting the provision of personal wireless communication services. Although Sprint is entitled to deference, as a public utility, to locate a cellular facility in the Town of Ontario, it is not entitled to dictate the number and placement of those facilities. Sprint consistently rejected the Town's proposed alternative of one facility, insisting on its right to singularly determine the level of service and the number of towers necessary to achieve that level of service. Accordingly, it is hereby

ORDERED that plaintiff's motion for summary judgment is denied and the defendants' motion for summary judgment is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.