■ In the Matter of CELLCO PARTNERSHIP, Appellant, v GARY BELLOWS, as Supervisor of the Town Board of the Town of Hurley, et al., Respondents. [692 NYS2d 203] —Crew III, J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered July 8, 1998 in Ulster County, which, inter alia, dismissed

petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of the Zoning Board of Appeals of the Town of Hurley denying petitioner's request for area variances for a wireless communications facility.

In May 1996, petitioner applied to the Town of Hurley Planning Board for site plan approval for the construction and operation of a public utility station in the Town of Hurley, Ulster County. Specifically, petitioner proposed to construct a 120-foot high monopole with antennas on a parcel measuring 100 feet by 150 feet, together with an equipment shelter (measuring 12 feet by 30 feet by 10 feet), all of which would be enclosed by a chain link fence topped with barbed wire. The monopole itself would measure between six feet and eight feet at its base and would taper to approximately three feet at the top.

The property in question, which apparently was acquired by New York Telephone in or around 1964, was improved with an existing 35-foot pole with antenna and platform and previously had been used as a two-way radio communications facility.[1] The proposed site is located in an area zoned A-2.5 which, under the Town's zoning ordinance, requires a minimum lot size of 2.5 acres, front and side setbacks of 50 feet, a rear setback of 75 feet and a 35-foot height limitation. The record reflects that an adjacent parcel also houses two antennae used by Central Hudson Gas & Electric Corporation, each measuring between 30 feet and 35 feet high.

Following a determination by the Town's Code Enforcement Officer in July 1996 that the proposed facility was not in compliance with the Town's zoning ordinance, petitioner applied for area variances and, further, appealed the foregoing determination to the Town's Zoning Board of Appeals (hereinafter ZBA). A public hearing was held on the application in September 1996, and a site visit was conducted shortly thereafter. In November 1996 the ZBA, which had been designated as lead agency under the State Environmental Quality Review Act (ECL art 8), issued a negative declaration for the project.

On or about January 6, 1997, the Town Board adopted a moratorium prohibiting "the approval of the siting of communication towers until April 30, 1997". Petitioner thereafter commenced this combined proceeding pursuant to CPLR article

---

1. The record is unclear as to the precise relationship between petitioner and New York Telephone and the manner in which petitioner purportedly acquired the parcel in question.

78 and action for declaratory judgment seeking, *inter alia*, an order directing the ZBA to issue the requested variances and a declaration that the moratorium adopted by the Town Board was illegal. Thereafter, on or about February 13, 1997, the ZBA denied petitioner's request for the area variances and upheld the decision previously rendered by the Town's Code Enforcement Officer. In so doing, the ZBA concluded, *inter alia*, that the variances sought were substantial and that the proposed facility was not in keeping with the residential character of the surrounding neighborhood.

Subsequently, on or about February 19, 1997, the Town Board rescinded the aforementioned moratorium, finding that appropriate procedures had not been followed in its attempt to establish a legal moratorium on the siting of communications towers. Simultaneously, the Town Board proposed Local Laws, 1997, No. 1 of the Town of Hurley, entitled "New Cellular Tower Moratorium", establishing a new six-month moratorium on the siting of cellular towers and other personal wireless service facilities. Petitioner responded by amending its petition/complaint seeking, *inter alia*, to annul the ZBA's denial of the requested variances and to enjoin the Town from adopting the second moratorium.

Supreme Court ultimately dismissed petitioner's challenge to the second moratorium, finding that, as such moratorium had expired by its own terms and no subsequent moratorium had been enacted, petitioner's challenge was moot. As to the balance of the requested relief, Supreme Court dismissed the petition/complaint finding, *inter alia*, that the ZBA's denial of the requested variances was rational. A judgment was entered to that effect, prompting this appeal by petitioner.

We affirm. It is well settled that a determination made by a zoning board is administrative or quasi-legislative in nature and, hence, rationality is the appropriate standard of review (*see, Matter of Sasso v Osgood*, 86 NY2d 374, 384, n 2). Thus, to the extent that decisions by either the Court of Appeals (*see, e.g., Matter of Khan v Zoning Bd.*, 87 NY2d 344, 351) or this Court (*see, e.g., Matter of Rogers v Baum*, 234 AD2d 685, 686) make reference to "substantial evidence" in this regard, it is clear that such review "is limited to determining 'whether the record contains sufficient evidence to support the rationality of the Board's determination' " (*id.*, at 686, quoting *Matter of Sasso v Osgood, supra*, at 384, n 2).

Turning to the particular matter before us, a review of petitioner's application for the requested area variances required the ZBA to engage in a balancing test, weighing the

benefit to petitioner if the subject variances were granted against the detriment to the health, safety and welfare of the surrounding neighborhood or community (*see*, Town Law § 267-b [3] [b]; *Matter of Stewart v Ferris*, 236 AD2d 767). To that end, the factors to be considered by the ZBA are as follows: "(1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance" (Town Law § 267-b [3] [b]). Based upon our review of the record as a whole (*see*, *Matter of Stewart v Ferris*, *supra*, at 767-768), we cannot say that the ZBA's decision to deny petitioner the requested variances was irrational.

Whatever infirmities may otherwise exist in the ZBA's determination, e.g., the apparent inconsistency between its issuance of a negative declaration and its subsequent finding that granting the requested area variances would "not [be] suitable to the residential character of the neighborhood",[2] there can be no disputing that the variances sought indeed were substantial. In this regard, the record reflects that petitioner sought to reduce the front yard setback from 50 feet to 20 feet, the rear yard setback from 75 feet to 49 feet and the side yard setback from 50 feet to 24 feet. Additionally, petitioner proposed to increase the permitted height of the monopole from 35 feet to 120 feet which, the record reflects, is some 70 feet to 75 feet above the treeline.[3] Further, although the site is situated in a wooded area, there are, as the ZBA observed, residences in the vicinity, one of which is located a mere 30 feet from the proposed location of the monopole which, as noted previously, is to be enclosed by a chain link fence topped with barbed wire. Moreover, to the extent that the site houses an existing utility

---

**2.** Although the ZBA received additional information from petitioner following the issuance of the negative declaration in November 1996 and questioned certain of petitioner's representatives at a December 1996 meeting, neither the record nor the ZBA's ultimate determination offers any insight as to the ZBA's apparent change in position on this point.

**3.** The record indicates that the trees in the area are between 45 feet and 50 feet tall.

antenna, as does an adjoining parcel, we need note only that the proposed 120-foot monopole cannot be compared to the existing 35-foot antennae. Such proof, coupled with the computerized photographs submitted by petitioner as part of its view-shed study, which depict how the monopole would look from various vantage points in the surrounding area, provides sufficient evidence to permit this Court to conclude that the ZBA's denial of the requested variances was rational. Petitioner's remaining contentions, including its assertion that it qualifies for the subject variances under the diminished standard applicable to public utilities (*see, Matter of Cellular Tel. Co. v Rosenberg*, 82 NY2d 364; *Matter of Consolidated Edison Co. v Hoffman*, 43 NY2d 598), have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.