NEXTEL OF NEW YORK, INC., d/b/a
Nextel Communications, Plaintiff

v.

CITY OF MOUNT VERNON,
et al.   Defendants

No. 03 CIV. 7175(SCR).

United States District Court,
S.D. New York.

March 21, 2005.

David L. Snyder, Snyder & Snyder, Tarrytown, NY, for Plaintiff.

Nichelle Aniece Johnson, City of Mount Vernon, Dept. of Law, Mount Vernon, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

## I. Background

### A. Factual History

Nextel Communications (the "Plaintiff") brought this action against the City of Mount Vernon, the Mount Vernon City Council and its members, the City of Mount Vernon Planning Board and its members, and the Commissioner and Deputy Commissioner of the Department of Buildings (the "Defendants"), pursuant to the Telecommunications Act of 1996, 47 U.S.C. § 332(c) ("TCA").

The City of Mount Vernon Planning Board is an administrative body authorized by the laws of the state of New York, and by the Code of the City of Mount Vernon, to grant special use permits for the construction and installation of antennas and related telecommunications facilities.

Plaintiff is licensed by the Federal Communications Commission (the "FCC") to provide digital mobile radio service throughout the state of New York, including in the City of Mount Vernon. Specifically, Plaintiff provides Specialized Mobile Radio Service ("SMR Service"), which combines traditional mobile telephone, paging, messaging, and dispatch services into a single handset, and competes with

traditional landline, cellular and wireless phone services.

Plaintiff's customers communicate through their handsets via a network of wireless service facilities constructed and operated by the Plaintiff. In order to reliably provide SMR Service, Plaintiff's network must be capable of "handing off" radio signals to other wireless facilities in the network. Where a gap in reliable service exists, Plaintiff's customers are unable to initiate, receive or maintain telephone calls.

Nextel's network, like other similar networks, exists to ensure both adequate coverage and adequate capacity. Coverage refers to the ability to provide a reliable signal to users in a given area, while capacity is the ability to support simultaneous call traffic. Both are required for the successful provision of wireless services.

In response to what it perceived to be deficiencies in both wireless telephone coverage and capacity in the City of Mount Vernon, Plaintiff identified three existing buildings in the City of Mount Vernon for the installation of additional wireless telecommunications facilities: (1) 590 East 3rd Street ("East Third Street Facility"); (2) 137 South Fourth Avenue ("South Fourth Avenue Facility"); (3) 700 South Fulton Avenue ("Industrial Park Facility"). The facilities that Plaintiff is seeking to install include panel antennas located on the rooftops of the above-mentioned buildings as well as related equipment located inside them.

In the fall of 2002, the Plaintiff submitted applications to the City of Mount Vernon for permission to install, at each location, 8–12 panel antennas that are 48 inches in height, 6 to 12 inches in width and 7–8.5 inches in depth. In response to complaints from the Defendants, the Plaintiff proposed a design that, at least in the Plaintiff's opinion, conceals all antennas behind a stealth structure on the roof in order to camouflage the antennas. Plaintiff also seeks to install additional equipment in the basement of the East Third Street Facility, and 230–240 square foot equipment shelters inside the South Fourth Avenue Facility and the Industrial Park Facility.

## B. Procedural History

Plaintiff filed its initial complaint in this action in September 2003. On October 6, 2003, the Defendants filed a motion to dismiss that complaint. On October 31, 2003, the Plaintiff filed an order to show cause, complaining that the Defendants were unreasonably delaying the processing of its applications.

On November 25, 2003, this court denied Defendants' motion to dismiss. At the same time, the court ordered the Plaintiff to address reasonable concerns that had previously been raised by the Defendants and, after Plaintiff's complied, ordered the Defendants to hold public hearings and issue decisions regarding Plaintiff's applications.

The City Planning Board voted to approve Plaintiff's East Third Street Facility at its April 8th 2004 meeting, but conditioned its approval on, *inter alia,* Plaintiff's submission of a $30,000 cash escrow deposit. On July 7, 2004, the Board voted to deny the South Fourth Avenue Facility and Industrial Park Facility applications in their entirety. On July 21, 2004, Plaintiff was granted leave to file an amended complaint, which it did on July 31, 2004 ("First Amended Complaint").

On August 18, 2004, Defendants filed a motion to dismiss the First Amended Complaint for grossly violating Federal Rules of Civil Procedure 8(a), 8(e) and 10(b). In the alternative, Defendants requested, pursuant to FED. R. CIV. P. 12(f), an order striking from the First

Amended Complaint all redundant, immaterial and/or impertinent matter included therein. Defendants also moved to dismiss all claims related to the East Third Street Facility on statute of. limitations grounds.

On September 9, 2004, Plaintiff filed a motion for partial summary judgment seeking an order 1) enjoining and declaring unlawful both the denials of Plaintiff's South Fourth Avenue Facility and Industrial Park Facility applications and the imposition of the cash escrow condition on the East Third Street Facility application; 2) directing Defendants to issue all permits and approvals requested by Plaintiff; 3) annulling any conditions that are contrary to New York state law or the United States Constitution; 4) ordering an inquest into damages.

The merits of both Defendants' motion to dismiss and/or strike the First Amended Complaint and Plaintiff's motion for partial summary judgment were orally argued before this court on November 9, 2004.

## II. Analysis

### A. Defendants' Motion to Dismiss and/or Strike

#### i. Motion to Dismiss the Amended Complaint

■ Defendants claim that it is unable to answer the First Amended Complaint, which contains 68 pages, 373 paragraphs and 10 separate causes of action. Plaintiff contends that Defendants' motion is frivolous and designed to further delay the need to address the merits of Plaintiff's case.

Defendant correctly points out that a complaint "shall contain...a short and plain statement of the claim showing that the pleader is entitled to relief," FED R. CIV. P. 8(a)(2), in which each averment "shall be simple, concise, and direct." FED. R. CIV. P. 8(e)(1). Although conceding that the First Amended Complaint is "slightly lengthy," Plaintiff insists that it is "chronological" and "simply describes the unlawfully burdensome hoops, hurdles and roadblocks which defendants participated in, controlled and devised."

The court agrees that dismissing the First Amended Complaint, in its entirety, is not necessary at this time. Rule 8 pleading is extremely permissive. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The key to Rule 8(a)'s requirements is whether adequate notice is given. *See Wynder v. McMahon,* 360 F.3d 73, 79 (2d Cir.2004). Dismissal pursuant to the rule "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988).

In this case, Plaintiff has set forth, in admittedly excruciating detail, the ways in which, in the Plaintiff's view, the Defendants' have unreasonably delayed the processing of their applications. But as the Second Circuit pointed out in *Wynder,* "plaintiff's long submission does not overwhelm the defendants' ability to understand or to mount a defense." 861 F.2d at 80. In the case before us, "plaintiff's submission is a model of neither clarity nor brevity,...but it is sufficient to put the defendants on fair notice." *Id.* at 79.

Therefore, Defendants' motion to dismiss the First Amended Complaint is denied.

#### ii. Motion to Strike

■ The Federal Rules of Civil Procedure permit the court to "order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Although dismissal of the entire First Amended

Complaint is not warranted, parts of it are unnecessary and inappropriate, and should be stricken.

In addition to factual allegations, Plaintiff has included in the First Amended Complaint references to expert reports, statutory provisions, case law, legislative histories, as well exhibits and an attorney's affidavits. These references and other materials are entirely unnecessary to any "short and plain statement of the claim," FED R. CIV. P. 8(a)(2), and, more importantly, would be prejudicial if ever reviewed by a jury. At any trial, it is the court's responsibility to instruct the jury on the applicable law, and Plaintiff's references thereto would interfere with the court's performance of its function.

Defendants also argue that any references in the First Amended Complaint to their alleged unreasonable delay in processing Plaintiff's applications should be stricken on the grounds that they are irrelevant in light of the City of Mount Vernon's issuance of final decisions with respect to all of Plaintiff's applications. Regardless, the court finds that statements regarding Defendants' delay in responding should not be stricken at this time, not only because they may be relevant to Plaintiff's claim for damages, but also because they are helpful to the court in that they provide "background information on the parties, their business and their relationship to each other." *Forschner Group v. B–Line A.G.*, 943 F.Supp. 287, 291–92 (S.D.N.Y.1996) (motions to strike are disfavored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter).

Therefore, Defendants' motion to strike is granted with respect to all references in the First Amended Complaint to expert reports, statutory provisions, case law, and legislative histories, as well as to all exhibits and the attorney affidavit(s).

### iii. Statute of Limitations

■ Defendants argue that any claims arising from the East Third Street Facility application are time barred. In support of its argument, Defendant cites language from the TCA, which provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(a)(7)(B)(v). Defendant further argues that, since the East Third Street Facility application was granted with conditions on April 8, 2004, Plaintiff's claims, included in its First Amended Complaint filed on July 30, 2004, are untimely.

Plaintiff responds that its claim with respect to the East Third Street Facility is not brought pursuant to the TCA, because it focuses on the cash escrow condition imposed by the City. As such, Plaintiff claims, it does not involve the TCA's prohibitions on unreasonable delays or denials of applications, but rather what it considers to be conditions that violate the United States and New York Constitutions.

Although, as discussed, Plaintiff's First Amended Complaint is not a model of clarity, it is apparent to the court that Plaintiff's claims with respect to the East Third Street Facility do not arise from the TCA and are, at least in part, constitutional in nature. Therefore, the applicable statutes of limitations are much longer and therefore not an issue in this case. *See Niagara Mohawk Power Corp. v. FERC*, 162 F.Supp.2d 107, 137 (N.D.N.Y.2001) (agreeing that challenges to unconstitutional governmental conduct are governed by the six-year statute of limitations provided by N.Y.C.P.L.R. § 213(1)); *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d

Cir.2004) (the applicable statute of limitations for § 1983 claims is three years from the time the claim accrued).

Therefore, Plaintiff's motion to dismiss on statute of limitations grounds should be denied.

### B. Plaintiff's Motion for Partial Summary Judgment:

#### i. Background

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

#### ii. Denials of Applications Regarding South Fourth Avenue and Industrial Park Facilities

#### 1. Applicable Standard of Review

■ The TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and *supported by substantial evidence* contained in a written record." 47 U.S.C. 332(c)(7)(B) (emphasis added). In this, as in other contexts, "substantial evidence" is construed to mean less than a preponderance, but more than a scintilla of evidence. *See Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 494 (2d Cir.1999). In other words, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Town of Oyster Bay,* 166 F.3d at 494.

■ In New York, cellular telephone companies are afforded the status of public utilities. *Cellular Tel. Co. v. Rosenberg,* 82 N.Y.2d 364, 604 N.Y.S.2d 895, 624 N.E.2d 990, 993 (1993). Rather than granting a variance only on a showing of "unnecessary hardship," a local zoning board must consider whether the public utility has shown "a need for its facilities" and whether the needs of the broader public would be served by granting the variance. *See Consolidated Edison Co. v. Hoffman,* 43 N.Y.2d 598, 403 N.Y.S.2d 193, 374 N.E.2d 105, 109 (1978).

There is a public necessity when there is a service gap for a particular provider in a particular service area. *See Rosenberg,* 604 N.Y.S.2d 895, 624 N.E.2d at 994. Although aesthetic concerns can be a valid basis for zoning decisions, *see Suffolk Outdoor Advertising Co. v. Hulse,* 43 N.Y.2d 483, 402 N.Y.S.2d 368, 373 N.E.2d 263 (1977), health concerns expressed by residents cannot constitute substantial evidence. *See* 47 U.S.C. § 332(c)(7)(B)(iv) ("No ... local government ... may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.").

#### 2. Application Denial For South Fourth Avenue Facility

■ With respect to the South Fourth Avenue Facility, the City concluded that the Plaintiff had "not established [that] a public necessity exists" because it "did not establish a gap in coverage in the site area where it proposed placing its site." The Court disagrees.

The expert consultant hired by the Planning Board, Michael Musso of Lawler, Matusky & Skelly Engineers LLP, issued a report that clearly supports Plaintiff's claim in this case. Although Musso ac-

knowledged that the need for the South Fourth Avenue Facility "is not primarily based on a gap in aerial coverage in the traditional sense," he concluded that Nextel has "documented a need for cell splitting to alleviate the capacity demands due to high usage of" the existing nearby site.

Notably, Musso's statements confirm that Nextel has established that its network is plagued by both existing and future problems. According to Musso, "[r]ooftop antenna arrays at 137 South 4th Avenue would alleviate *existing and future* service problems (e.g., dropped calls, poor reception) associated with the [existing] southern antenna array at 21–29 West Sidney Avenue" location (emphasis added). As a result, it is "likely that Nextel customers will increasingly experienc[e] service problems" in the site area.[1]

Defendants make various arguments to justify their denial of the South Fourth Avenue application, but none is persuasive. First, citing a decision by Judge Mukasey in *Nextel v. City of New Rochelle*, 01 Civ. 10049 (S.D.N.Y. Dec. 3, 2001), Defendants claim that no serious gap has been shown here because there has been no showing of complaints by police, fire or school officials or other customers. But the Defendants have mischaracterized Judge Mukasey's reasoning. Although Judge Mukasey did point to the lack of customer complaints as evidence that there was no service gap, he never held that customer complaints were a necessary component of any successful application for a special use permit. In

fact, Judge Mukasey also discussed the conclusions made by the city's consultant in that case, which were much less favorable to Nextel in that case than Musso's conclusions regarding the South Fourth Avenue Facility.

Defendants also argue that its decisions were in part the result of concerns about adverse aesthetic impacts. However, these considerations were not mentioned in the City's written decisions, and cannot be raised now. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (the courts may not accept *post hoc* rationalizations for agency action).

Considering the record in this case, one cannot reasonably find substantial evidence in support of the City's denial of the South Fourth Avenue Facility application.

### 3. Application Denial For Industrial Park Facility

■ With respect to the Industrial Park Facility, however, Plaintiff's evidence is less compelling. Once again, the City, in denying Plaintiff's application, concluded that "the applicant does not have a public necessity for the site in that the applicant has not established a gap in coverage," in part because "records of customer complaints (e.g. dropped calls, interference, or other indicators of poor service in the vicinity of the site) were not provided although specifically requested."

---

1. In its Opposition brief, Defendants seem to argue that the findings of Michael Musso unambiguously support its decisions. In support of this claim, Defendants attached an additional affidavit from Musso to their Opposition brief stating, *inter alia,* that Plaintiff failed to provide essential information needed to fully assess its South Fourth Avenue and Industrial Park applications. The tone of this affidavit is undoubtedly less enthusiastic than Musso's prior conclusions, at least with re-

spect to the South Fourth Avenue Facility application, but it is not persuasive here. First it presumably was not a part of the record on which the Defendants made their initial decision, and the court's task is to determine whether that decision was based on substantial evidence. Also, it was apparently generated in the midst of litigation—rather than during or prior to the Planning Board's deliberations—and is therefore less credible.

Musso's findings with respect to this facility were decidedly more equivocal than they were with respect to the South Fourth Avenue Facility. On the one hand, Musso acknowledged that "[s]hould the consumer use forecasts provided by the applicant be realized . . . , it is possible that Nextel customers will experience service problems" that would be alleviated by the installation of the Industrial Park Facility. But, on the other hand, he found that "a gap in coverage does not exist throughout the entire" area at issue and that it might be feasible to upgrade an existing facility that is currently operating within capacity limits, to provide additional service to the relevant area. Moreover, he found that the approved East Third Street Facility would likely provide some service to this site area.

Although Plaintiff bolstered its claim with respect to this facility by citing expert reports from Robert Bertona, Nextel's radio frequency engineer, and by noting testimony from one Nextel customer who has had unreliable service at his nearby office, the court cannot conclude, based on this record, that the City's decision was not based on substantial evidence.

### iii. The Cash Escrow Condition Imposed on East Third Street Application

New York's General City Law permits a city's authorized board "to impose such reasonable conditions and restrictions as are directly related to and incidental to the proposed special use permit." N.Y. GEN. CITY § 27–b (4). Similarly, the Mount Vernon City Code authorizes the approving agency to "attach such additional conditions and safeguards to any special permit as are, in its opinion, necessary to ensure initial and continual conformance to all applicable standards and requirements." CITY OF MOUNT VERNON CODE § 267–27.

Plaintiff cites several cases for the proposition that municipalities lack the statutory authority to require cash escrows. *See, e.g., Town of Poughkeepsie v. Holden Construction Co., Inc.,* 71 A.D.2d 886, 419 N.Y.S.2d 531 (2nd Dep't 1979). But Plaintiff's cases are not persuasive, because they construe New York's Town Law, not its General City Law, which is at issue here. *See id.* at 532–33. Moreover, the relevant language of the Town Law cited in those cases suggests that the Town Law granted less authority to towns than the General City Law grants to cities like Mount Vernon. *See id.* citing N.Y. TOWN § 277.

Plaintiff also argues that the cash escrow is impermissible under New York law because it is not directly related to and incidental to the proposed use of the property. Plaintiff claims that a surety bond, which is the condition typically imposed on recipients of special permits, would be adequate to achieve the City's requirements.

In response, Defendants argue that they (as well as their counterparts in other cities) have required a cash escrow of other applicants for special permits to install telecommunications facilities and that the amount of the escrow at issue here, although higher than that imposed on previous applications, is based on estimates of the likely cost of dismantling Plaintiff's facilities. Defendants argue that a cash escrow is appropriate in telecommunications cases because the rapidly changing nature of the telecommunications industry increases the likelihood that the technology installed will need to be changed.

The issue here, therefore, appears to be whether the Defendants have an adequate basis for treating applicants for special permits in the telecommunications field differently than applicants seeking special permits for other uses. But apart from the conclusory allegations by the Plaintiff

that a surety bond would be adequate, and the conclusory arguments made (largely at oral argument) by Defendants that cash escrows are necessary, neither party has provided the court with an adequate record on which to make the necessary determinations on this issue. Therefore, the court cannot make a reliable judgment on the legality of the cash escrow, and Plaintiff's motion with respect to this issue must be denied, at least at this time.[2]

## III. Conclusion

For these reasons, Defendants' motion to dismiss the First Amended Complaint is DENIED. Defendants' motion to dismiss all claims related to the East Third Street Facility is also DENIED. Defendants' motion to strike is GRANTED.

Plaintiff's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff must submit a second amended complaint, excluding all inappropriate material, by April 15, 2005.

Defendants must grant Plaintiff's South Fourth Avenue Facility application.

It is so ordered.

**2.** Of course, this conclusion applies to Plaintiff's constitutional objections—the applicable constitutional tests similarly require some assessment of the state's interests and the extent to which a cash escrow is sufficiently related to those interests.