In the Matter of MARKET SQUARE PROPERTIES, LTD., Respondent, v TOWN OF GUILDERLAND ZONING BOARD OF APPEALS, Appellant.

Third Department, July 11, 1985

**APPEARANCES OF COUNSEL**

*Hinman, Straub, Pigors & Manning, P.C. (William F. Sheehan* of counsel), for appellant.

*Tobin & Dempf (John W. Clark* of counsel), for respondent.

*Hancock & Estabrook (David E. Peebles* and *Elletta Sangrey Callahan* of counsel), for Guilderland Central School District, *amicus curiae.*

**OPINION OF THE COURT**

LEVINE, J.

Petitioner commenced this CPLR article 78 proceeding to review a determination by respondent which denied a special use permit for the establishment of a shopping center. The proposed development was to be placed on 7.6 acres of land located at the southeast corner of the intersection of Western Avenue (a State highway) and Johnston Road (an Albany County highway in the Town of Guilderland) and was to consist of retail stores totaling 71,000 square feet in area, the majority of which was to be devoted to a speciality food store. The subject property is substantially within a "B-1" zoning district, under which a "designed local shopping center" is a permissible use, subject to the issuance of a special use permit. The plot borders a residential district to the east and south. The Westmere Ele-

mentary School is immediately adjacent to the south and the school's only driveway (accessing Johnston Road) apparently encroaches on petitioner's land. Because of the project's location at the corner of a State and county highway, petitioner was required by law (General Municipal Law § 239-m) to submit its application to the Albany County Planning Board for a recommendation. That Planning Board issued a report, dated August 15, 1984, objecting to the issuance of the permit on the ground that "the increased traffic from the development will adversely effect [sic] the neighborhoods along Johnston Road. The curb cuts as shown on the site plan could also cause traffic problems along Western Avenue."

Respondent held three hearings during August and September 1984, at the last of which it voted 5 to 1 to disapprove petitioner's application for a special use permit. Opposition to the permit focused on the traffic problems and the effect of the project on the neighboring school. During the proceedings, petitioner submitted a report by a traffic expert which recommended modifications in the original proposal to minimize the impact of the anticipated increased traffic at various intersections bordering the subject property, principally that of widening Johnston Road at Western Avenue (to accommodate additional left and right turn lanes) and prohibiting left turns from the shopping center's easterly exit onto Western Avenue and its exit onto Johnston Road. Petitioner indicated its willingness to cooperate in making these changes and also to modify its original plan regarding the configuration of the shopping center service delivery road next to the school. The original plan had provided for the partial sharing of access for the service delivery road and the school's driveway. Petitioner proposed to change this so that the common driveway would be expanded and the dual access would be separated by a 10-foot island which would be fenced and heavily planted with trees. Despite these proposed changes from the original plan, respondent rejected the application.

Upon judicial review, Special Term annulled the determination and directed respondent to grant a special use permit subject to the conditions proposed by petitioner to mitigate the project's impact on traffic and the school. Special Term held that respondent's denial was based on specific findings that the proposal would create severe traffic congestion at the intersection of Johnston Road and Western Avenue and would create a safety hazard for children attending the school, neither of which was found to be supported by evidence in the record. As to the first ground for denial, Special Term relied heavily on the testimony of petitioner's expert that if the suggested changes in

Johnston Road and traffic patterns in the area were implemented, the level of service at the intersection of Johnston Road and Western Avenue would be the same in 1995, regardless of whether the shopping center was created. Regarding the risk to the safety of school children, Special Term noted that over 95% of students at the school arrived by bus and that there was an absence of evidence in the record to show that truck and other service deliveries to the shopping center would coincide in place and time with school bus arrivals and departures. Special Term therefore ruled that, without evidentiary support for these factual grounds, respondent's denial of the application was based solely on general objections or speculation which were legally insufficient for the denial of a special use permit when, as here, the proposed use is generally permissible under the zoning ordinance.

We reverse. Unquestionably, the burden on an applicant is less severe when a permit is being sought for a nonprohibited use under the ordinance than when a zoning variance is necessary (*Matter of North Shore Steak House v Board of Appeals,* 30 NY2d 238, 244). However, this does not mean that requests for special exceptions must always be granted subject only to the imposition of conditions; the applicant must still establish compliance with the conditions for granting a special use permit set forth in the ordinance (*Matter of Tandem Holding Corp. v Board of Zoning Appeals,* 43 NY2d 801, 802). The zoning agency may deny the application by citing specific, reasonable grounds (supported by evidence) for concluding that the use, though permitted, is not desirable at the particular location (*Green v Lo Grande,* 96 AD2d 524, 525, *appeal dismissed* 61 NY2d 758). The Town of Guilderland Zoning Ordinance (§ VI [D] [a], [d], [e]) contains typical conditions for the granting of a special use permit: establishment that the proposal is consistent with the public health and welfare, creates no undue traffic congestion or hazard, and reasonably safeguards the character of the surrounding neighborhood. Respondent's findings that the proposed shopping center would create undue traffic congestion and hazards, not only at the Johnston Road/Western Avenue intersection but also on Johnston Road, and that it would create risks to the safety of school children pertain to the statutory conditions set forth in the ordinance.

A review of the record before respondent convinces us that the foregoing objections were specific, reasonable and had evidentiary support. Regarding the traffic-related aspects of the determination, respondent received reports from the Town Planning Board and the town's planning consultant, to the effect that the

Johnston Road/Western Avenue intersection was one of the most heavily traveled in the entire town and that the specific, proposed use was extremely traffic intensive. Respondent could also have reasonably concluded from data set forth in the report of petitioner's expert that northbound traffic flow along Johnston Road at peak hours would be doubled as a result of the proposed development. The expert also projected that by 1995, the traffic "level of service" (i.e., interruption of flow, driving maneuverability, comfort, safety, etc.) would reach the limit of marginally acceptable capacity in an *urban* environment at the key intersection if the earlier discussed changes were made, and exceed that limit if they were not made. In our view, respondent could rationally reject the assurances of petitioner's expert that, with the suggested changes, the levels of service at Johnston Road/Western Avenue and other affected nearby intersections would not be higher in 1995 than they would be without the addition of the new shopping center. Neither petitioner nor its expert explained or otherwise attempted to reconcile the apparent inconsistency of this prediction with the portions of the report indicating that there would be a significant increase in the volume of traffic and that two thirds of the expected patrons of the proposed shopping center would be "new traffic specifically on the street system to travel to the shopping center". Moreover, the expert's projections were based upon estimates of population growth substantially less than the most recent trend as established by Federal census figures for the town. Finally, respondent also had before it the expert opinion of the Albany County Planning Board that the shopping center would unduly increase traffic for the neighborhoods *along* Johnston Road. This objection would not have been significantly ameliorated by the changes in traffic control subsequently proposed by petitioner.

Regarding respondent's findings concerning the hazards to school children as a result of the proposed development, the following evidence was submitted: the school parent-teacher's association, school board president and school board attorney advised that school activity started with bus delivery during the morning peak travel period and extended beyond the normal school day. Bus unloading and loading at present takes place along the school access driveway and buses now "stack" for pickup on petitioner's property. This would be adjacent to petitioner's planned service delivery road and in proximity to the common entrance to both access ways. The rear of the buildings of the project, including loading docks and waste storage facilities, face the school and create attractions to normally inquisitive children. The town's own Planning Board noted that John-

ston Road lacked sidewalks and expressed the "greatest concern" regarding the proximity of the project to the school, the location of the service delivery road and increased traffic on Johnston Road. The foregoing clearly establishes a rational basis for respondent's "commonsense judgment" that the proposal, if approved and implemented, would be inimical to the public health and welfare by creating a safety hazard to the children attending the adjacent elementary school (*Matter of Durante v Town of New Paltz Zoning Bd. of Appeals,* 90 AD2d 866, 867; *Matter of Morehouse v Town of Horicon Planning Bd.,* 85 AD2d 769, 770). In rejecting this ground because of a lack of proof of the exact location of school bus pickup and unloading and of the number of truck deliveries to the facility, and whether such deliveries would coincide with the arrival and departure of school buses, Special Term improperly shifted to respondent petitioner's burden regarding compliance with the conditions for granting a special use permit set forth in the zoning ordinance.

In summary, it cannot be said that the reasons advanced for respondent's determination lacked specificity or evidentiary support in the record. Since undue traffic congestion (*see, e.g., Matter of Durante v Town of New Paltz Zoning Bd. of Appeals, supra; Matter of Franchise Realty Interstate Corp. v Cohalan,* 78 AD2d 552, *affd* 54 NY2d 643) and hazards to the safety of bused or pedestrian school children (*see, e.g., Brick Hill Constr. Corp. v Zoning Bd. of Appeals,* 74 AD2d 810, *affd* 53 NY2d 621) have repeatedly been held sufficient grounds for denial of an application for a special use permit, respondent's denial of petitioner's application should be confirmed.

KANE, J. P., MAIN, CASEY and WEISS, JJ., concur.

Judgment reversed, on the law, with costs, determination confirmed, and petition dismissed.