[668 NYS2d 774]

In the Matter of WAL-MART STORES, INC., et al., Petitioners, v PLANNING BOARD OF THE TOWN OF NORTH ELBA, Respondent.

Third Department, February 5, 1998

## APPEARANCES OF COUNSEL

*Bartlett, Pontiff, Stewart & Rhodes,* Lake Placid *(Thomas A. Ulasewicz* of counsel), for petitioners.

*Shanley, Sweeney, Reilly & Allen, P. C.,* Albany *(J. Michael Naughton* of counsel), for respondent.

### OPINION OF THE COURT

YESAWICH JR., J.

In October 1994, petitioner Wal-Mart Stores, Inc. (hereinafter petitioner) applied to respondent for a conditional use permit and site plan approval for a large retail store it proposed to construct and operate in the Town of North Elba, Essex County (*see, Matter of Wal-Mart Stores v Campbell,* 238 AD2d 831). Respondent, the Planning Board of the Town, assumed lead agency status for the ensuing review of the project pursuant to the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), and in May 1995 petitioner voluntarily filed a draft environmental impact statement, concluding that the project would have little significant impact on the surrounding area. After a lengthy public hearing, respondent adopted a final environmental impact statement, in which it responded to hundreds of written comments addressing, *inter*

alia, the visual impact of the proposed structure and parking lot upon the scenic area in which it was to be located, and the effect this retail operation, and the secondary growth it could be expected to spawn, would have on the general character and ambience of the community.

Thereafter, the consultant hired by respondent to assist in reviewing petitioner's applications and completing the SEQRA process submitted two sets of proposed findings, one supporting approval of the project and one supporting disapproval. On January 9, 1996, respondent voted three to one (its fifth member having refrained from taking any part in the proceedings due to a conflict of interest) to adopt the second set of findings, and deny petitioner's applications. Petitioner, and an owner of the land on which the store was to be erected, then commenced this proceeding to annul that determination, arguing that it is not supported by substantial evidence and is arbitrary, capricious, and infected by legal error. Petitioners also contend that respondent is estopped from denying the subject applications, due to its failure to render a decision thereon within the time in which it agreed to do so, and that it violated the Open Meetings Law (Public Officers Law § 103 [a]) when deciding the matters at hand. Finding that the petition raises a substantial evidence question within the scope of CPLR 7803 (4), Supreme Court transferred the proceeding to this Court (see, CPLR 7804 [g]).

■ The challenged determination not being premised upon evidence received in the context of a true adjudicatory hearing, as contemplated by CPLR 7803 (4), the transfer was inappropriate. The public hearing conducted by respondent, although required by statute (see, Town Law § 274-b [6]) and by the Town Land Use Code, was informational in nature and did not involve the receipt of sworn testimony or taking of "evidence" within the meaning of CPLR 7803 (4) (see, Matter of Bonded Concrete v Town Bd., 176 AD2d 1137, 1138). Consequently, the standard by which the determination must be gauged is one of rationality, not substantial evidence (see, CPLR 7803 [3]; Matter of Sasso v Osgood, 86 NY2d 374, 384, n 2; Matter of Gernatt Gravel Prods. v Town of Collins, 105 AD2d 1057, 1058).

Nevertheless, in the interest of judicial economy, we have retained jurisdiction and examined the merits of the petition (see, Matter of Save the Pine Bush v Planning Bd., 83 AD2d

741, 742). Having done so, we are of the view that the determination should be confirmed.

■ Petitioners maintain that many of the detailed factual findings made by respondent, and upon which its determination was grounded, are without support in, or are directly contradicted by, the record before respondent. To this end, the petition relies in large measure upon the findings that were proposed by respondent's consultant supporting a decision approving the project. Not having been adopted by respondent, these findings are of little import; while they arguably demonstrate that the record could have supported a contrary decision, that, without more, is not enough to satisfy petitioners' burden of proving that respondent's determination is unreasonable (*cf., Matter of Criscione v Wallace*, 145 AD2d 697, 699).

■ While the analysis required to be undertaken by SEQRA necessitates that an agency weigh the environmental consequences of its action, the basis for the agency's decision is not—as petitioner suggests—restricted to those considerations alone (*see, Glen Head—Glenwood Landing Civic Council v Town of Oyster Bay*, 88 AD2d 484, 492; *Matter of Town of Henrietta v Department of Envtl. Conservation*, 76 AD2d 215, 223); indeed, the agency's capacity to regulate activity on other, legal grounds within the sphere of its authority continues unabated (*cf., Goldhirsch v Flacke*, 114 AD2d 998, 999, *lv denied* 67 NY2d 604). Here, it must be borne in mind that respondent concluded not only that the proposal did not meet the requirements of SEQRA, but also that it did not satisfy the relevant criteria set forth in the Town Land Use Code, including two of the three specific conditions for obtaining a conditional use permit (namely, those providing that a permit will only be granted if the proposed use "will not have a materially adverse impact upon adjoining and nearby properties", and "will not result in a clearly adverse aesthetic impact"). Additionally, respondent found that several "general development considerations", which it was constrained to evaluate and which have as their aim the avoidance of "any undue adverse impact on the natural, physical, social and economic resources of the Town", were not met. In making these findings, respondent was entitled to consider factors outside the scope of the environmental review mandated by SEQRA, insofar as they bear on matters legitimately within the purview of the Town Land Use Code.

And, petitioners' protestations notwithstanding, it does not appear that the determination was based upon impermissible considerations such as public sentiment or " 'community pressure' " (*Matter of Lee Realty Co. v Village of Spring Val.*, 61 NY2d 892, 894; *Matter of Pleasant Val. Home Constr. v Van Wagner*, 41 NY2d 1028, 1029). Moreover, while the decision refers to the economic effect the proposed store would be expected to have upon other local businesses, it does so in the context of assessing the probability and extent of the change it would work upon the over-all character of the community, as a result of an increased vacancy rate among commercial properties in the downtown area—an entirely proper avenue of inquiry, even within SEQRA (*see, Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 366-367).

■ Furthermore, a review of the record discloses ample factual foundation for respondent's decision. Petitioners' arguments that respondent should not have considered the adverse visual impact of a large earthen berm that was to be constructed between the developed area and the road, because increasing the size of the berm was suggested by respondent as a means of mitigating certain other adverse environmental impacts, is unavailing. It is irrelevant whether the change was initiated by petitioners, respondent or a third party, for respondent's overriding mandate is to review the entire project, including any possible modifications that might decrease its harmful effects, and determine, *inter alia*, whether the mitigating measures adopted will in fact ameliorate those adverse effects. It suffices to note that petitioners do not dispute that the large berm would be visible from the road, and that its landscaped contour would create a different visual impression than does the natural vista to which passersby are currently treated.

Respondent's conclusions with respect to the negative aesthetic impact of the project as a whole are also substantiated by the record. Given the location of the project, at the western "gateway" into a resort community noted for its rustic nature and striking scenery, and the fact that the store and parking lot would lie partially within an area designated a "Scenic Preservation Overlay", established to protect the view of nearby Whiteface Mountain, it was appropriate for respondent to place great weight on the visual effect of this large development. The record establishes that despite all efforts to screen the store and parking area from the road, their presence would nevertheless bring about a noticeable change in the visual

character of this critical area. The fact that the store would not block the "classic" view of Whiteface Mountain does not render irrational respondent's finding that the development—including a traffic light, which petitioners concede would eventually be required if background traffic continues to grow at a modest rate—"would be visible within part of the overall scenic viewshed for travelers" on State Route 86; nor does it necessarily warrant concluding that the visual impact of the project is insignificant. The computer simulations prepared by petitioner demonstrate otherwise and furnish justification for respondent's conclusions in this regard.

As for respondent's findings with respect to the store's likely impact upon community character, it appears that the evidence proffered by petitioners in an effort to demonstrate that other communities have suffered no decline in commercial property values after a Wal-Mart store opened is of little probative value, for most of the areas studied are not truly comparable to the Lake Placid region, a premier resort and tourist community. Moreover, the estimates of downtown commercial vacancy rates relied upon by respondent did not exceed the maximum projections submitted by petitioner's consultant (taking into account reasonably foreseeable secondary growth [*see, Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 367-368, *supra*]), and it was well within the realm of "discretion and commonsense judgment[ ]" (*Matter of Market Sq. Props. v Town of Guilderland Zoning Bd. of Appeals*, 66 NY2d 893, 895) for respondent to reach the conclusions it did.

In sum, it was in no way irrational, on this record, to find that petitioners failed to carry their burden of showing that their contemplated use of the subject property "conforms with the standards imposed by the zoning ordinance" (*Matter of Monro Muffler/Brake v Town Bd.*, 222 AD2d 1069; *see, Matter of Schadow v Wilson*, 191 AD2d 53, 57), or to conclude "that the use, though permitted, is not desirable at the particular location" (*Matter of Market Sq. Props. v Town of Guilderland Zoning Bd. of Appeals*, 109 AD2d 164, 166, *affd* 66 NY2d 893, *supra*).

Petitioners' remaining contentions, including its claim that the Open Meetings Law (Public Officers Law § 103 [a]) was violated, are equally unpersuasive (*see, e.g., Matter of MCI Telecommunications Corp. v Public Serv. Commn.*, 231 AD2d 284, 290; *Mobil Oil Corp. v City of Syracuse Indus. Dev. Agency*, 224 AD2d 15, 29, *appeal dismissed* 89 NY2d 860, *lv denied* 89 NY2d 811).

MIKOLL, J. P., MERCURE, CREW III and PETERS, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.