[766 NYS2d 712]

In the Matter of NEXTEL PARTNERS, INC., et al., Respondents-Appellants, v TOWN OF FORT ANN et al., Appellants-Respondents.

Third Department, October 30, 2003

### APPEARANCES OF COUNSEL

*Law Office of Stan L. Pritzker*, Hudson Falls (*Stan L. Pritzker* of counsel), for Town of Fort Ann and others, appellants-respondents.

*Crane, Greene & Parente*, Albany (*Jacqueline Phillips-Murray* of counsel), for respondents-appellants.

*Law Office of Marc S. Gerstman*, Albany (*Marc S. Gerstman* of counsel), for John Pettica and others, respondents-appellants.

### OPINION OF THE COURT

SPAIN, J.

Petitioner Nextel Partners, Inc., a telephone corporation licensed by the Federal Communications Commission (hereinafter FCC) and the New York State Public Service Commission (hereinafter PSC), provides nationwide wireless cellular telephone service to its subscribers using a network of telecommunication facilities comprised of elevated antennae and related equipment to transmit low power radio signals. Petitioner Independent Wireless One Corporation (hereinafter IWO) is a network manager for national wireless telecommunications businesses. On April 6, 2001, Nextel applied to respondent Town Board of the Town of Fort Ann for a use variance to construct and operate a 110-foot telecommunication facility consisting of a wood laminate monopole disguised as a pine tree with a nine-inch single cylinder antenna on top (with an 18-inch diameter).

The application sought to erect the monopole on leased land on Pilot Knob Road in the Town of Fort Ann, Washington County. The leased property is in the Lake George Park, situated in what is known as the Pilot Knob Area, designated as a residential area pursuant to the "Ordinance Establishing the Pilot Knob Residential Area in the Lake George Tract" (hereinafter the ordinance), enacted in 1965 by the Town Board pursuant to authority conferred by General Municipal Law § 280. The ordinance prohibits the use of real property in the Pilot Knob Area for "any industrial or commercial purpose," but vests power in the Town Board to grant variances to authorize necessary or desirable uses of the land.

In its application, at the first public hearing on June 16, 2001 and over the course of the next seven months, Nextel submitted evidence demonstrating that substantial coverage gaps and inadequacies exist in respondent Town of Fort Ann and surrounding areas, including the Pilot Knob Area and points south, on the western and northern shores of Lake George and on the lake itself. Nextel produced radio frequency propagation map studies and other evidence demonstrating that due to the mountainous topography, no existing structure in the Town could be used. Its examination of 18 alternate sites in the region which were technologically feasible revealed that the proposed site was the only available one that could unilaterally eliminate the most significant existing coverage gaps and improve inadequacies in existing service to the areas. Nextel submitted simulated photographs and other evidence to support its position that, due to its disguised design and location in a heavily wooded area surrounded by 95-foot trees, the proposed facility would be relatively inconspicuous with the top visible from parts of the lake and trails or nearby state land, but not from the surrounding residential area. Also proffered was an extensive report from a real estate consultant concluding, based upon sufficiently comparable facilities, that the proposal would have little, if any, measurable affect on surrounding property values. Support for the proposal came from residents of the region, including cell users such as area physicians and volunteer firefighters.

Area residents who vigorously oppose the proposed facility submitted evidence and expert opinions and raised concerns about the proposal's potential adverse affect on property values, aesthetics and the residential character of Pilot Knob, and challenged the necessity of locating the facility at this site rather than at alternate sites. Subsequent to the hearing, IWO—as-

serting that it had no service in the service area targeted in Nextel's proposal and needed to co-locate on Nextel's proposed facility—contacted Nextel seeking co-applicant status. By letter dated August 13, 2001, Nextel requested that the Town Board allow it to amend its application to include IWO as a co-applicant. In January 2002, the Town Board notified Nextel that it would not permit Nextel to amend its application to include IWO because the request was made after the hearing, that it constituted "a material change in the underlying application" and it was an attempt to avoid the Town's moratorium on telecommunication facilities adopted by the Town Board in September 2001.

At a February 20, 2002 Town Board meeting, the Town Supervisor read a statement into the record denying Nextel's request for a use variance, finding adequate coverage exists in the Town and that Nextel had not demonstrated that significant gaps exist in the Town that would be corrected or improved by the proposed facility. Also cited was the Town Board's conclusion, crediting the opinions of the residents' experts, that the facility would present a visual obstruction and nuisance, would be out of harmony with the area and reduce property values, and that alternate sites outside of the Town were not adequately pursued.

After Nextel and IWO commenced this CPLR article 78 proceeding against the Town, the Town Board and the Town's building inspector (hereinafter collectively referred to as the town respondents) challenging the denial of the use variance as, among other things, irrational, arbitrary and capricious and violative of the federal Telecommunications Act of 1996 (see 47 USC § 151 et seq.; § 332) (hereinafter federal TCA), the Town Board on March 11, 2002 unanimously adopted a written resolution denying the use variance. Petitioners filed an amended verified petition, additionally challenging the resolution and, after the town respondents filed their answer with the administrative record, petitioners moved to strike certain documents from the record and a motion to intervene by several town residents (hereinafter collectively referred to as resident respondents) was granted.

Supreme Court partially granted petitioners' motion to strike portions of the record, granted the petition and annulled the Town Board's determination, finding Nextel had established its entitlement to construct the facility under the public utility exception set forth in *Matter of Cellular Tel. Co. v Rosenberg*

(82 NY2d 364 [1993]). The court directed the town respondents to issue to petitioners the necessary permits and approvals.

■ Initially, we cannot agree with the contentions raised on respondents' appeals. There is no question that petitioners are public utilities whose entitlement to a use variance is governed by the "public utility" exception articulated by the Court of Appeals (*see Matter of Consolidated Edison Co. of N.Y. v Hoffman,* 43 NY2d 598, 611 [1978]), later held applicable to the siting and modification of all public utility facilities, including cellular telephone companies in *Matter of Cellular Tel. Co. v Rosenberg* (*supra* at 371-372; *see Mason v Clifton Park Water Auth.,* 302 AD2d 818 [2003]; *Matter of SBA, Inc. v Schwarting,* 299 AD2d 940 [2002]; *Matter of Lloyd v Town of Greece Zoning Bd. of Appeals,* 292 AD2d 818 [2002], *lv dismissed and denied* 98 NY2d 691 [2002]; *Matter of Farrell v Johnson,* 266 AD2d 873 [1999]). We are unpersuaded by their claims that *Rosenberg* is inapplicable due to asserted changes in the wireless telecommunications industry since *Rosenberg* was decided, such as decreased regulation and increased competition. Rather, the relevance of such changes should be examined on a case-by-case basis with regard to a particular proposal,[1] as the industry changes claimed do not undermine the continuing viability of the rationale underlying the public utility exception or its applicability to cellular telephone service, which continues to be regulated by the FCC and the PSC.

Next, we find that the federal TCA did not nullify New York's common-law public utility exception. Rather, the federal TCA merely placed limits on state and local government authority to *deny* construction of wireless telecommunication facilities—such as proscribing discrimination among functionally equivalent providers or prohibitions against wireless services (*see* 47 USC § 332 [c] [7] [B])—and expressly preserved state and local authority over "decisions regarding the placement, construction, and modification of personal wireless service facilities" (47 USC § 332 [c] [7] [A]; *see Sprint Spectrum v Willoth,* 176 F3d 630, 637-639 n 1 [2d Cir 1999]; *Cellular Tel. Co. v Town of Oyster Bay,* 166 F3d 490, 492-494 [2d Cir 1999]; *see also* 1 Salkin, New York Zoning Law and Practice ch 12). Thus, Nextel's application should be judged by the reduced standard for use vari-

---

1. For example, evidence that a particular area is already adequately served by several wireless providers may be a significant factor in evaluating a claim of necessity for a particular proposed facility (*see Sprint Spectrum v Willoth,* 176 F3d 630, 643 [2d Cir 1999]).

ances articulated in *Consolidated Edison* and *Rosenberg* for applications by public utilities.

We also reject the apparently novel claim that the public utility exception does not apply here on the premise that the ordinance was passed pursuant to state law and, as such, does not constitute a traditional zoning ordinance which must accommodate the needs of public utilities. While the ordinance was enacted by the Town Board under the authority of General Municipal Law § 280—designed to protect the Lake George Park—and assertedly no other zoning ordinance governing general land use has been enacted in the Town, we find that the ordinance, for this purpose, is indistinguishable from the type of local zoning to which the public utility exception for variances applies (*see* Town Law § 261). Additionally, we interpret the ordinance as creating a residentially zoned district in which commercial uses such as the proposed facility are excluded except upon issuance of a use variance.

Turning to the merits of Nextel's application, we find that it demonstrated that the construction of a facility on the proposed site is necessary to provide safe and adequate service and that it will eliminate substantial aspects of the existing gaps in cellular service, improve transmission and reception of existing service on Lake George and in the surrounding region, and provide service in places where no wireless service is currently available (*see Matter of Cellular Tel. Co. v Rosenberg*, 82 NY2d 364, 372 [1993], *supra*, citing *Matter of Consolidated Edison Co. of N.Y. v Hoffman*, 43 NY2d 598, 611 [1978], *supra*; *Sprint Spectrum v Zoning Bd. of Appeals of Town of Guilderland*, 173 Misc 2d 874, 877-878 [1997]). Nextel's evidence amply established compelling reasons—related to technology, economics, efficiency and other factors—to justify the position that it is preferable and more feasible to use this single site than multiple alternate sites (*see id.*), that the intrusion on the community is genuinely "minimal" (*Matter of Consolidated Edison Co. of N.Y. v Hoffman, supra* at 611), and that it will have a "negligible impact on the surrounding neighborhood" (*Matter of Cellular Tel. Co. v Rosenberg, supra* at 373; *see Sprint Spectrum v Zoning Bd. of Appeals of Town of Guilderland, supra* at 877-878).

As Nextel has made the requisite showing to warrant the approval of its variance request, we conclude that the Town Board's denial of the application was arbitrary and not rational (*see Matter of Sasso v Osgood*, 86 NY2d 374, 384 n 2 [1995]; *Matter of Cellular Tel. Co. v Rosenberg, supra* at 373) and was

not supported by substantial evidence in the record (*see* 47 USC § 332 [c] [7] [B] [iii]; *see also Cellular Tel. Co. v Town of Oyster Bay*, 166 F3d 490, 493-494 [1999], *supra*). A review of the Town Board's written resolution[2] reflects that it did not adhere to the reduced showing required of a public utility to obtain a use variance (*see Matter of Cellular Tel. Co. v Rosenberg, supra*). Moreover, the Town Board relied to a great extent on conclusory or unsubstantiated expert opinion to challenge Nextel's evidence which had documented, inter alia, coverage gaps, the necessity for this site and its ability to eliminate gaps and improve service, and the lack of available, feasible alternatives. The opposing proof also failed to provide objective or documentary evidence sufficient to undermine Nextel's compelling proof. While the resident respondents' experts raised many apparently valid issues and understandable concerns, their opinions (and criticisms of Nextel's proof) did not provide a rational basis for the Town Board's denial of the requested variance. By way of example, the opinions of the resident respondents' engineers regarding the existence of coverage gaps and the availability and feasability of alternate sites were on their face speculative and not sufficiently supported by objective evidence. We further conclude that, on the proof presented, the denial of the request to add IWO as a co-applicant was irrational. Since "[a] board's determination denying a variance will be sustained only if it has a rational basis and is supported by the record" (*Matter of Cellular Tel. Co. v Rosenberg, supra* at 373, citing *Matter of Consolidated Edison Co. of N.Y. v Hoffman, supra* at 608), the Town Board's determination here was properly annulled by Supreme Court.

Furthermore, we discern no basis upon which to disturb that portion of Supreme Court's judgment, explained in its written decision, granting most of petitioners' motion to strike certain documents from the administrative record certified and submitted by the town respondents (*see* CPLR 7804 [e]). The stricken documents were either not directly or sufficiently relevant to the instant variance application, not produced by the town respondents for petitioners during the administrative proceeding despite proper requests, or not shown to have been relied upon by the Town Board.

---

2. Unlike Supreme Court, we find it appropriate and necessary to consider the Town Board's written resolution, both because the federal TCA requires that the denial be "in writing" (47 USC § 332 [c] [7] [B] [iii]) and because petitioners amended their petition, thereby addressing and challenging the resolution.

Finally, in light of the foregoing, little discussion is warranted regarding Nextel's cross appeal addressed to that portion of Supreme Court's decision declining to find that the Town Board violated the Open Meetings Law (Public Officers Law art 7). While the record of the public hearings contains support for the conclusion that some aspects of the Town Board's proceedings on this request were improperly conducted in private in violation of the Open Meetings Law, no resulting prejudice is shown and we find unwarranted any award of counsel fees or costs (*see* Public Officers Law § 107 [2]; *cf. Matter of Gordon v Village of Monticello*, 87 NY2d 124, 126-128 [1995]).

MERCURE, J.P., CARPINELLO, MUGGLIN and LAHTINEN, JJ., concur.

Ordered that the judgment is affirmed, without costs.