Matter of Southern Realty & Dev., LLC v Town of Hurley (2023 NY Slip Op 03744)

Matter of Southern Realty & Dev., LLC v Town of Hurley

2023 NY Slip Op 03744

Decided on July 6, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 6, 2023

535737
[*1]In the Matter of Southern Realty and Development, LLC, et al., Respondents,
v
Town of Hurley et al., Appellants.

Calendar Date:April 26, 2023

Before:Clark, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ.

Rodenhausen Chale & Polidoro LLP, Rhinebeck (Andrew L. Lessig of counsel), for appellants.
Whiteman Osterman & Hanna LLP, Albany (John J. Henry of counsel), for respondents.

McShan, J.
Appeal from a judgment of the Supreme Court (Kevin R. Bryant, J.), entered June 27, 2022 in Ulster County, which partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Planning Board of the Town of Hurley denying the request of petitioner Southern Realty and Development, LLC for site plan approval.
Petitioner Brown Cow Rental LLC is the owner of an approximately ½-acre parcel located at the intersection of State Routes 28 and 375 in the Town of Hurley, Ulster County and petitioner Southern Realty and Development, LLC (hereinafter SRD) seeks to construct a drive-thru Dunkin' franchise (hereinafter the project) on said parcel. In August 2020, SRD applied for site plan approval to respondent Planning Board of the Town of Hurley (hereinafter the Board). The Board held a series of public hearings on the application, as well as a nonpublic meeting (hereinafter the gateway meeting) at which members of the Board discussed issues surrounding the project with SRD and others. After more than a year of engaging in extensive discussions with SRD, the Ulster County Planning Board (hereinafter the UCPB) and other involved entities, the Board voted to reject SRD's application, citing primarily to the purported negative impact the project would have on traffic at the intersection.
Thereafter, petitioners commenced the instant proceeding pursuant to CPLR article 78, seeking to annul the Board's denial of SRD's application as arbitrary and capricious and direct the Board to approve its application. Following joinder of issue, Supreme Court vacated the Board's determination and remanded the matter to the Board for further proceedings. In doing so, the court found, in relevant part, that the Board improperly conducted meetings out of the public view and failed to adequately provide its reasoning for rejecting the application on the record. Respondents appeal.
As a preliminary matter, we find that Supreme Court erred in determining that the Board's participation in the gateway meeting and any reliance on the substance of discussions at said meeting constituted a violation of the Open Meetings Law (see Public Officers Law art 7). "The purpose of the Open Meetings Law is to prevent municipal governments from debating and deciding in private what they are required to debate and decide in public" (Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 686 [1996] [citations omitted]; see Matter of Lynch v New York City Civilian Complaint Review Bd., 206 AD3d 558, 561 [1st Dept 2022], lv denied 39 NY3d 902 [2022]). However, a violation of the Open Meetings Law renders an ensuing determination "not void but, rather, voidable upon good cause shown" (Matter of Harvey v Zoning Bd. of Appeals of the City of Kingston, 166 AD3d 1149, 1151 [3d Dept 2018] [internal quotation marks and citations omitted]; see Matter of Cutler v Town of Mamakating, 137 AD3d 1373, 1375 [3d Dept 2016]). Petitioners [*2]did not articulate in their petition the manner in which the substance of discussions at the gateway meeting were an attempt to avoid public scrutiny of the project or whether a quorum of the board was actually present (see Matter of Braunstein v Board of Zoning Appeals of the Town of Copake, 100 AD3d 1091, 1092 [3d Dept 2012]; see also Matter of Gedney Assn. v City of White Plains, 147 AD3d 938, 939-940 [2d Dept 2017]). Moreover, had petitioners pleaded and established an Open Meetings Law violation, we find that petitioners failed to demonstrate good cause requiring nullification, as they effectively rely on discussions that occurred at the gateway meeting with various parties as well as statements made by members of the Board at the meeting in support of their contention that the Board's denial was arbitrary and capricious (see Matter of Harvey v Zoning Bd. of Appeals of the City of Kingston, 166 AD3d at 1151; Matter of Halperin v City of New Rochelle, 24 AD3d 768, 777 [2d Dept 2005], appeal dismissed 6 NY3d 890 [2006], lv denied 7 NY3d 708 [2006]; Matter of MCI Telecom. Corp. v Public Serv. Commn. of the State of N.Y., 231 AD2d 284, 291 [3d Dept 1997]; cf. Matter of Oshry v Zoning Bd. of Appeals of Inc. Vil. of Lawrence, 276 AD2d 491, 491-492 [2d Dept 2000]).
Further, although the parties appear to be proceeding under the premise that Supreme Court's order directed respondents to grant approval to the project application, the order is devoid of any specific language to that effect, as the decretal paragraph merely notes that it was granting the petition to the extent that it sought vacatur of the Board's decision and that it was remanding for further proceedings not inconsistent with its determination that the record precluded adequate judicial review (see generally Matter of Lavender v Zoning Bd. of Appeals of the Town of Bolton, 141 AD3d 970, 971 [3d Dept 2016], appeal dismissed 28 NY3d 1051 [2016], lv denied 29 NY3d 907 [2017]). To that end, we disagree with Supreme Court's determination that judicial review was precluded based upon the Board's procedurally-deficient review process and a fundamentally flawed record. While the Board clearly failed to set forth its decision and reasoning in a written resolution, the January 10, 2022 meeting minutes memorializing the Board's vote provide adequate indicia of its reasoning for denial (see generally Public Officers Law § 106 [1];Town Law § 274-a [11]; Matter of Allens Cr./Corbett's Glen Preserv. Group v Town of Penfield Planning Bd., 249 AD2d 921, 922 [4th Dept 1998]; Matter of Powell v Town of Coeymans, 238 AD2d 788, 789 [3d Dept 1997]), and the record contains sufficient evidence to permit our review of the reasoning underlying the Board's determination (see generally Matter of Friends of Hammondsport v Village of Hammondsport Planning Bd., 11 AD3d 1021, 1022 [4th Dept 2004]; Matter of Iwan v Zoning Bd. of Appeals of Town of Amsterdam, 252 AD2d 913, 914 [3d Dept 1998]; cf. Matter of Filangeri [*3]v Pulichene, 229 AD2d 702, 703 [3d Dept 1996]). That being said, our review "is restricted solely to the grounds invoked by [the Board] as the basis for its decision" (Matter of Source Renewables, LLC v Town of Cortlandville Zoning Bd. of Appeals, 213 AD3d 1178, 1180-1181 [3d Dept 2023]; see Matter of Smith v City of Norwich, 205 AD3d 140, 145-146 [3d Dept 2022]; Matter of Village Estates Condominium Assn. v Planning Bd. of Town of Lake George, 298 AD2d 665, 667 [3d Dept 2002]). Thus, while respondents contend that we should affirm the Board's determination based upon various issues that purportedly arose during the entirety of the 18-month review of the application and, in their view, remain unaddressed, the duty to articulate such concerns fell to the Board. Accordingly, in assessing the propriety of the Board's determination, our review is limited to those concerns that were formally discussed as outstanding at the January 10 meeting and expressed in the meeting minutes (see generally Matter of Veysey v Zoning Bd. of Appeals of City of Glens Falls, 173 AD2d 921, 923 [3d Dept 1991]).[FN1]
Under that rubric, we begin by noting that "[a] local planning board has broad discretion in deciding applications for site plan approvals, and judicial review is limited to determining whether the board's action was illegal, arbitrary and capricious, or an abuse of discretion" (Matter of 7-Eleven, Inc. v Town of Hempstead, 205 AD3d 909, 910 [2d Dept 2022]; see Matter of Barnes Rd. Area Neighborhood Assn. v Planning Bd. of the Town of Sand Lake, 206 AD3d 1507, 1510 [3d Dept 2022]; Matter of Town of Mamakating v Village of Bloomingburg, 174 AD3d 1175, 1178 [3d Dept 2019]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Biggs v Eden Renewables LLC, 188 AD3d 1544, 1548 [3d Dept 2020] [internal quotation marks and citations omitted]; see Matter of Shapiro v Planning Bd. of Town of Ramapo, 155 AD3d 741, 743 [2d Dept 2017]). At the outset, to the extent that petitioners contend that the Board could not properly consider traffic concerns as part of its deliberation, it is clear that such considerations were permissible under the applicable zoning law (see Zoning Ordinance of the Town of Hurley § 210-41 [D] [1]) and we discern no issue with the Board assessing those concerns as a necessary component of its review pursuant to Town Law § 274-a (see Matter of Sepco Ventures v Planning Bd. of Town of Woodbury, 230 AD2d 913, 915 [2d Dept 1996]; see also Town Law § 274-a [2]). Nevertheless, based upon our review, we find that the Board's various justifications for denial, as set forth during the January 10, 2022 meeting, are unsupported by the record. 
The meeting minutes reflect that denial of SRD's application was premised on certain outstanding traffic concerns raised in a January 5, 2022 memorandum from the Board's planning consultant, Nelson Pope Voorhis (hereinafter NPV), as well as comments previously [*4]provided by the UCPB on August 4, 2021. As set forth by respondents, the outstanding traffic-related issues included concerns over the shoulder widening planned for northbound Route 375; the southbound queues on Route 375 that would block ingress and egress into the project site; the amount of stacking capacity within the project site during peak hours; and issues concerning the maneuverability of fire, delivery and garbage trucks in the project site when other vehicles were present.
Beginning with those issues pertaining to the southbound queues on Route 375 and the widening of the shoulder on the northbound lane, the record reflects that these concerns were previously identified by NPV and responded to by petitioners' engineering consultant, Creighton Manning Engineering, LLP (hereinafter CM). As reflected in the various studies, there is no dispute that the queue in the southbound lane of Route 375 would occasionally extend beyond the proposed entrance to the site on that road. However, in consultation with the Department of Transportation (hereinafter DOT), petitioners received permission to widen the shoulder in order to allow for northbound traffic on Route 375 to pass vehicles waiting to make a left-hand turn into the project site. In response, NPV stated that the shoulder widening was "not an acceptable practice" without further elaboration and despite the unrebutted suggestion that the practice had the support of DOT and was compliant with the Vehicle and Traffic Law. Further, the initial application to DOT referenced a traffic study, which was provided to DOT on September 15, 2020. In this respect, DOT had granted the permits concerning ingress and egress into the project site and had approved the proposed traffic pattern. Moreover, respondents do not dispute petitioners' averment that, at the gateway meeting, the DOT representative indicated that there were no further concerns on the part of DOT at that point in time regarding the traffic impact of the project. Accordingly, we find that the Board's rejection of the proposed mitigation of the concerns raised by the left-hand turn into the project site based upon the comments from NPV were unsupported. The remaining concern that "the long southbound queues may still cause the northbound left turn queues to extend into the intersection of Route 28 and Route 375 creating traffic congestion and safety issues" were addressed by CM on various occasions, primarily noting that this traffic condition would continue regardless of the project, and that video of the intersection revealed that the southbound queue would clear entirely after each traffic light cycle.
Similarly without merit are the Board's concerns pertaining to the stacking capacity in the project lot. To this end, CM submitted to the Board, in response to a request from the UCPB in August 2021, an analysis of the stacking capacity at two Dunkin' Donuts locations in Ulster County on Friday and Saturday mornings — locations with similar [*5]traffic volume to that at the proposed site — finding that the longest observed queue was 14 vehicles at a Dunkin' location in the City of Kingston, Ulster County. However, NPV continued raising concerns regarding the stacking capacity of the project site, and offered its own study and methodology, which concluded that the project required a stacking capacity of 21 vehicles, as it had observed a queue of that length at a Dunkin' location in the Town of Saugerties, Ulster County. However, the 21-car queue length observed by NPV was only present for 15 minutes of the eight hours that the Saugerties location was studied. Moreover, although CM disputed the methodology employed by NPV in determining the need for such a large stacking capacity, it nonetheless provided site plans depicting a queue of 21 vehicles, which was acknowledged by NPV. Further, CM provided a letter from a representative of Dunkin', Connie Justis, who offered an example in which dual drive-thru lanes, as contemplated by the project, increased the efficiency of a drive-thru location in Ohio. Noting the foregoing submissions, we find that the Board's continuing objection based upon the internal traffic on the site, offered without further elaboration on the aforementioned mitigation, was unfounded.
In addition, we similarly conclude that the Board's concerns pertaining to the maneuverability of large vehicles in the project lot are unsupported. CM had submitted maneuverability studies concerning box trucks, tractor trailers and a front-end loading garbage truck, noting that deliveries would be scheduled on site during nonbusiness hours and that petitioners would be amenable to such an arrangement being a condition of approval. Notably, the Board provided no reasoning why that proposal did not alleviate the concerns raised by NPV. As to the maneuverability of emergency vehicles, CM noted that the lot would be cleared in the event of an emergency, and the Board's determination does not indicate that it took into account CM's representation that the project site was compliant with the New York State Fire Code.
Moreover, the record reflects that various considerations beyond the aforementioned traffic concerns permeated the decision-making process of the Board, rendering it arbitrary and capricious (see Matter of Ramapo Pinnacle Props., LLC v Village of Airmont Planning Bd., 145 AD3d 729, 731 [2d Dept 2016]). The Board's decision appears to have been in response to local public opposition, evidenced at least in part by the comment at the gateway meeting indicating that a "mom and pop" restaurant would be more desirable than the project and would have an easier permitting process. It is well established that such concerns are not a proper ground upon which the Board may base the denial of an otherwise permitted use (see id. at 730-731; Bongiorno v Planning Bd. of Inc. Vil. of Bellport, 143 AD2d 967, 968 [2d Dept 1988]; Matter of Ferrigan v Thompson, 135 AD2d 953, 954 [3d Dept 1987], [*6]appeal dismissed 72 NY2d 854 [1988]).
Ultimately, while we are mindful that we should not substitute our judgment when assessing the propriety of an administrative determination (see Matter of Edscott Realty Corp. v Town of Lake George Planning Bd., 134 AD3d 1288, 1290 [3d Dept 2015]; Matter of Sheer Pleasure Lingerie v Town of Colonie Planning Bd., 251 AD2d 859, 862 [3d Dept 1998]), our assessment of the record demonstrates that the traffic-related concerns were adequately addressed by petitioners and the ensuing reasons relied upon by the Board in denying SRD's application were conclusory and unsupported (see Matter of Bagga v Stanco, 90 AD3d 919, 920 [2d Dept 2011]; Matter of SCI Funeral Servs. of N.Y. v Planning Bd. of Town of Babylon, 277 AD2d 319, 320 [2d Dept 2000]; Matter of Castle Props. Co. v Ackerson, 163 AD2d 785, 787 [3d Dept 1990]; Syracuse Bros. v Darcy, 127 AD2d 588, 588 [2d Dept 1987]; see also Brunner v Town of Schodack Planning Bd., 178 AD3d 1181, 1183 [3d Dept 2019]; Matter of Sanford v Whearty, 216 AD2d 399, 400 [2d Dept 1995]; Matter of Eastern N.Y. Props. v Cavaliere, 142 AD2d 644, 646 [2d Dept 1988]; compare Matter of Market Sq. Props. v Town of Guilderland Zoning Bd. of Appeals, 109 AD2d 164, 167 [3d Dept 1985], affd 66 NY2d 893 [1985]). Therefore, the Board must engage in further proceedings not inconsistent with this decision.
The parties' remaining contentions, to the extent not rendered academic by our determination or explicitly addressed herein, have been considered and found to be unavailing.
Clark, J.P., Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, with costs.

Footnotes

Footnote 1: There is no dispute that the project was a permitted use pursuant to the Zoning Ordinance of the Town of Hurley and constituted a type II action pursuant to the State Environmental Quality Review Act (see 6 NYCRR 617.5 [c] [9]).