Matter of Freepoint Solar LLC v Town of Athens Zoning Bd. of Appeals (2024 NY Slip Op 06409)

Matter of Freepoint Solar LLC v Town of Athens Zoning Bd. of Appeals

2024 NY Slip Op 06409

Decided on December 19, 2024

Appellate Division, Third Department

Pritzker, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 19, 2024

CV-24-0711

[*1]In the Matter of Freepoint Solar LLC et al., Appellants,
v
Town of Athens Zoning Board of Appeals, Respondent.

Calendar Date:November 15, 2024

Before: Egan Jr., J.P., Pritzker, Lynch, Fisher and Powers, JJ.

The Murray Law Firm PLLC, Clifton Park (Jacqueline Phillips Murray of counsel), for appellants.
Dreyer Boyajian LLP, Albany (John J. Dowd of counsel), for respondent.
Letitia James, Attorney General, Albany (Joshua M. Tallent of counsel) and John J. Sipos, Public Service Commission, Albany, for State of New York and another, amici curiae.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Richard Mott, J.), entered April 9, 2024 in Greene County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying petitioners' request for a use variance.
In 2016, petitioners, developers of renewable energy infrastructure, bought two parcels of real property in a rural residential zoning district on Potic Mountain Road in the Town of Athens, Greene County, with the intention of constructing a new solar energy generation facility (hereinafter the project). In 2017, the Athens Town Board adopted Local Law No. 2 (2017) of the Town of Athens, which revised the local zoning code for the purpose of regulating solar energy — specifically, to prohibit solar facilities in all zoning districts except in certain commercial and industrial zones (see Code of the Town of Athens § 180-52). In February 2021,[FN1] petitioners filed with respondent a use variance application for the project. In September 2021, respondent denied petitioners' application, based on its application of Town Law § 267-b (2) (b) in assessing whether a public utility use variance was warranted for the project. Petitioners commenced an initial proceeding pursuant to CPLR article 78 challenging respondent's first denial of the use variance request (see NY St Cts Elec Filing [NYSCEF] Doc No. 58, Decision and Order, in Freepoint Solar LLC v Town of Athens Zoning Bd. of Appeals, Sup Ct, Greene County, index No. EF2021-795). Supreme Court (Silverman, J.) determined that respondent incorrectly applied the standard set forth in Town Law § 267-b (2) (b) rather than the public utility necessity standard set forth in Matter of Consolidated Edison Co. of N.Y. v Hoffman (43 NY2d 598, 610 [1978]) and remitted the matter to respondent, directing it to use the correct standard. After reviewing petitioners' application upon remittal, respondent again denied petitioners' use variance request because, among other reasons, petitioners "failed to establish the public necessity of [the project]." Petitioners thereafter commenced the instant proceeding pursuant to CPLR article 78 seeking to annul respondent's denial of the use variance application, contending that it was arbitrary and capricious and unsupported by substantial evidence. Following respondent's answer, Supreme Court (Mott, J.) dismissed the petition, affirming respondent's denial of petitioners' use variance request and finding that the denial was "not arbitrary and capricious and is supported by substantial evidence in the record." Petitioners appeal.
Petitioners contend that Supreme Court incorrectly affirmed respondent's denial of their application for a use variance as respondent's determination was arbitrary, capricious and unsupported by substantial evidence.[FN2] "The law is well settled that local zoning boards have broad discretion in considering applications for variances, and judicial review is limited to determining whether [*2]the action taken by the board was illegal, arbitrary or an abuse of discretion" (Matter of Wen Mei Lu v City of Saratoga Springs, 162 AD3d 1291, 1292 [3d Dept 2018] [internal quotation marks and citations omitted]; see Matter of 54 Marion Ave., LLC v City of Saratoga Springs, 175 AD3d 1660, 1661 [3d Dept 2019]). While Town Law § 267-b (2) (b) provides guidelines for use variance applications generally, applicants that are proposing to develop public utility infrastructure are subject to the "public necessity" use variance test, which sets a lower burden for establishing the applicant's right to an approved variance (Matter of Consolidated Edison Co. of N.Y. v Hoffman, 43 NY2d at 611; see Matter of Nextel Partners v Town of Fort Ann, 1 AD3d 89, 93 [3d Dept 2003], lv denied 1 NY3d 507 [2004]). Indeed, "it has long been held that a zoning board may not exclude a utility from a community where the utility has shown a need for its facilities" (Matter of Cellular Tel. Co. v Rosenberg, 82 NY2d 364, 372 [1993] [internal quotation marks, brackets and citation omitted]). As such, a public utility provider seeking a use variance for the siting or modification of a proposed facility " 'must show that [siting a new facility or] modification [of an existing facility] is a public necessity in that it is required to render safe and adequate service, and that there are compelling reasons, economic or otherwise, which make it more feasible to [grant a use variance] than to use alternative sources of power such as may be provided by other facilities' " and that " 'where the intrusion or burden on the community is minimal, the showing required by the utility should be correspondingly reduced' " (id., quoting Matter of Consolidated Edison Co. of N.Y. v Hoffman, 43 NY2d at 611).
As a threshold matter, we first find that respondent erred in failing to afford petitioners a reduced showing relative to their application as a public utility because of the project's minimal impact (see Matter of Consolidated Edison Co. of N.Y. v Hoffman, 43 NY2d at 611). That the project will have a minimal impact was not only recognized by Supreme Court, but also is fully supported by the evidence in the record, including the unanimous State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) determination which found no significant environmental impacts (see Horvath Communications, Inc. v Town of Lockport Zoning Bd. of Appeals, 2018 NY Slip Op 33830[U] *3 [Sup Ct, Niagara County 2018], affd 184 AD3d 1155 [4th Dept 2020]),[FN3] as well as the objective data and findings by respondent's consultant. Although respondent "did not agree" that the reduced showing applied, this ipse dixit explanation is arbitrary and capricious and is not supported by substantial evidence (see Matter of Nextel Partners, Inc. v Town of Fort Ann, 1 AD3d at 95; see generally Matter of Cellular Tel. Co. v Rosenberg, 82 NY2d at 373-374; Matter of Kinderhook Dev., LLC v City of Gloversville Planning Bd., 88 [*3]AD3d 1207, 1209 [3d Dept 2011], lv denied 18 NY3d 805 [2012]). Further, to the extent that respondent, on appeal, offers after-the-fact explanations as to why petitioners were not entitled to a reduced showing, "our review is restricted solely to the grounds invoked by [respondent] as the basis for its decision" (Matter of Southern Realty & Dev., LLC v Town of Hurley, 218 AD3d 900, 902 [3d Dept 2023] [internal quotation marks and citation omitted]).
Bearing in mind that petitioners must be afforded a reduced showing, we now turn to respondent's findings regarding public necessity. Specifically, petitioners argue that respondent erred in finding that there was no public necessity for the project because respondent (1) focused on the needs and wants of a small group of landowners in the Town who opposed the project and (2) focused on the short-term goals established by the New York State Climate Leadership and Community Protection Act (L 2019, ch 106) (hereinafter the CLCPA). Specifically, as to the second argument, respondent determined that there was no public necessity for the project because, at the time, "New York State was on track to exceed [the stated goal of the CLCPA] of installing six gigawatts of distributed solar by 2025 and on progress toward installing 10 gigawatts by 2030." As to this first argument, as Supreme Court (Silverman, J.) aptly determined in the CPLR article 78 decision regarding respondent's first denial (see NY St Cts Elec Filing [NYSCEF] Doc No. 58, Decision and Order, in Freepoint Solar LLC v Town of Athens Zoning Bd. of Appeals, Sup Ct, Greene County, index No. EF2021-795), "public necessity must be viewed in a broader consideration of the general public's need for the service." In this regard, local concerns are not typically part of the more general public necessity calculus (see generally Matter of Consolidated Edison Co., of N.Y. v Hoffman, 43 NY2d at 610); instead, local concerns involve aesthetics and environmental impacts. These specific local concerns, however, were directly analyzed and considered during the aforementioned SEQRA process, which revealed the minimal impact the project would actually have. While these aesthetic concerns and potential environmental impacts might be paramount relative to certain other energy generating utilities, on this record they simply are not present.
As to petitioners' second argument, whether a particular public utility meets its burden in establishing a public necessity is based, in part, on the type of energy being produced by the proposed project and the State's policy relative thereto. In this case, the project deals with an alternate energy source and, while not talismanic, a review of our State's policy as reflected in the CLCPA will contextually assist in determining whether a public necessity exists vis-À-vis the "general public." The CLCPA created a "comprehensive regulatory program to reduce greenhouse gas emissions" (L 2019, ch 106, § 1 [12]). Specifically, the [*4]CLCPA limits statewide greenhouse-gas emissions to 60% of 1990 emissions by 2030 and 15% of 1990 emissions by 2050 (see ECL 75-107 [1]). To help obtain these emissions reductions, the CLCPA provides that the Public Service Commission (hereinafter PSC) "shall establish a program requiring that jurisdictional load serving entities," i.e., regulated utilities and energy service companies, source at least 70% of their customers' electricity from solar, wind or other "renewable energy systems" by 2030 and 100 percent of their customers' electricity from zero-emissions sources by 2040 (Public Service Law § 66-p [1] [a], [b]; [2]).
To facilitate the transition to renewable energy, the CLCPA further directs that the PSC "establish programs to require the procurement by the [S]tate's load serving entities of . . . at least six gigawatts of photovoltaic solar generation by [2025]" (Public Service Law § 66-p [5]). The Legislature's use of the phrase "at least" makes clear that the CLCPA's solar capacity procurement requirement is a floor, not a ceiling, and the State may therefore set even more ambitious targets to achieve the CLCPA's long-term objectives. Furthermore, the CLCPA also requires the PSC to establish a program requiring that "a minimum of [70%] of the state[-]wide electric generation secured by jurisdictional load serving entities to meet the electrical energy requirements of all end-use customers in [the State] in [2030] shall be generated by renewable energy systems" (Public Service Law § 66-p [2]). In response to these mandates, in May 2020, the PSC, among other things, modified an existing program, the NY-Sun program, administered by the New York State Energy Research and Development Authority, by incorporating the CLCPA's goal of "at least" six gigawatts of solar generation capacity by 2025 (see Order Extending and Expanding Distributed Solar Incentives, NY PSC Case No. 19-E-0735 at 14-15 [May 14, 2020]). Thereafter, in April 2022, over a year prior to respondent's denial of petitioners' application, the PSC again modified the NY-Sun program to increase the procurement goal from six gigawatts of solar generation capacity by 2025 to 10 gigawatts by 2030 (see Order Extending and Expanding Distributed Solar Incentives, NY PSC Case No. 19-E-0735 [Apr. 14, 2022]).
Given the foregoing, certainly one cannot quarrel with the premise that New York State's goal of transitioning to renewable energy is designed to benefit the public at large, and this project is in line with that goal. Moreover, respondent's finding of no public necessity because the State was "on track" to meet certain goals is arbitrary and capricious and unsupported by substantial evidence. Not only did this finding focus on established floors rather than ceilings but, perhaps most importantly, it side-steps the consideration of the overarching goals of the CLCPA and future, long-term goals and targets. Considering these specific items, as well as the record before respondent as [*5]a whole, we find that petitioners established the public necessity of the project, especially in light of the reduced showing required, given the minimal impact the project will have (see Matter of Cellular Tel. Co. v Rosenberg, 82 NY2d at 372-374; Matter of Nextel Partners, Inc. v Town of Fort Ann, 1 AD3d at 94-95).
Finally, we review respondent's determination that petitioners "failed to establish that there were compelling reasons, economic or otherwise, which made it more feasible to seek a use variance for [the project] than to use alternatives sites." In reaching this determination, respondent erroneously required petitioners to establish that it would be "impossible for [the project] to be constructed in a zoning district within the Town where solar facilities were permitted" (emphasis added). To that end, "[t]here is no legal requirement that [petitioners] analyze each and every possible parcel of land before obtaining a variance; such a requirement would be unworkable" (Horvath Communications, Inc. v Town of Lockport Zoning Bd. of Appeals, 2018 NY Slip Op 33830[U] at *5).
Our review of the record demonstrates that respondent's determination ignores that petitioners cannot simply move the project elsewhere. The land on which the project will be located has been purchased by petitioners and Central Hudson Gas & Electric (hereinafter CHGE) has approved petitioners' interconnection request to connect the project, at its current location, to CHGE's distribution system because, at this location, there is "adequate . . . capacity to support interconnection." In fact, CHGE's hosting maps, which were provided to respondent, indicate that there is no hosting capacity for a project of similar size in zoning districts where the project would be a permitted use or "elsewhere in the Town." Accordingly, petitioners' submissions to respondent establish
" 'that there are compelling reasons, economic or otherwise, which make it more feasible to [grant a use variance]' " than to use an alternative site (Matter of Cellular Tel. Co. v Rosenberg, 82 NY2d at 372, quoting Matter of Consolidated Edison Co. of N.Y. v Hoffman, 43 NY2d at 611), especially in light of the reduced showing required given the minimal intrusion the project will have, and respondent's conclusion to the contrary is arbitrary and capricious and not supported by substantial evidence (see Matter of Cellular Tel. Co. v Rosenberg, 82 NY2d at 373-374; Matter of Consolidated Edison Co. of N.Y. v Hoffman, 43 NY2d at 611; Matter of Nextel Partners v Town of Fort Ann, 1 AD3d at 94-95; Matter of United Water New Rochelle v Zoning Bd. of Appeals of Town of Eastchester, 254 AD2d 490, 491-492 [2d Dept 1998], lv denied 93 NY2d 808 [1999]). As such, this Court directs respondent to grant petitioners' application for a use variance. In light of this determination, petitioners' remaining arguments have been rendered academic.
Egan Jr., J.P., Lynch, Fisher and Powers, JJ., concur.
ORDERED that the judgment [*6]is reversed, on the law, with costs, determination annulled, and matter remitted to respondent for the issuance of the requested use variance.

Footnotes

Footnote 1: Prior to this, petitioners had purchased two additional parcels which would also be part of the project.

Footnote 2: This Court granted a motion by the Attorney General and the Public Service Commission to appear as amici curiae and permitted respondent to reply. The State entities support petitioners' argument that Supreme Court incorrectly affirmed respondent's denial of petitioners' application because the court considered the wrong renewable energy targets in determining that the project did not meet the public necessity standard.

Footnote 3: This is not to say that respondent was per se constrained by the SEQRA finding.